Kathryn Eckerman, now Kathryn Eckerman Frasco, Appellant, v. City of Peoria, Appellee.

### Gen. No. 10,300.

Opinion filed March 8, 1949. Released for publication March 26, 1949.

Knoblock, McConnell & Kennedy and William C. Nicol, all of Peoria, for appellant.

C. D. Klatt and Max J. Lipkin, both of Peoria, for appellee.

Mr. Justice Dove delivered the opinion of the court.

This is an action by Kathryn Frasco against the City of Peoria seeking a judgment for the difference between the amounts she received for her services as an employee of the city and payment at the rate of $175 per month from January 19, 1942 to January 9, 1946, under the provisions of the Policemen's Minimum Wage Act.

The complaint was filed on February 16, 1946, and as amended alleged that plaintiff was a member of and employed by the police department and was sworn and commissioned to perform police duties of the defendant city; that said employment began on January 19, 1942, and continued until January 9, 1946; that during this period of time she was entitled to a salary of at least $175 per month and that the defendant should have paid her approximately $8,352.81 but only paid her $4,801.52 and she demands judgment for the difference being $3,551.29. The answer of the city denied that the plaintiff was a member of and employed by the police department of the city and denied she was ever sworn or commissioned to perform police duties. A trial was had resulting in a judgment in favor of the defendant and the plaintiff appeals.

The record shows that for some time prior to January 19, 1942, the mother of the plaintiff had been employed by the city; that upon her resignation the then mayor of Peoria told the plaintiff she could have the same job and told her that her pay would be the same her mother was receiving which was $90 per month. On January 19, 1942, the plaintiff, then nineteen years of age, went to work in Room 200 of the City Hall Building in the Bureau of Records and Identification where she had a desk and where she did her work between 8:00 o'clock a.m. and 4:30 or 5:00 o'clock p.m. This department was then in charge of George M. Karl and he continued in charge until April 26, 1943, when he entered the army and upon his return from the army in October 1945, he resumed his former duties. In addition to Officer Karl there were two other male officers in the department and two female employees, one of whom was the plaintiff. For her services she was paid $90 per month from January 19, 1942, to and including May 1, 1944, and from that date until January 9, 1946, she received $115 per month. She was a clerk in the record department of the police

department. She interviewed prisoners each morning who were brought up to the office where she worked and the information she obtained was placed by her on a card. Thereafter the prisoner was photographed, fingerprinted, weighed and measured by one of the male officers. After this was done the photographs and fingerprints were pasted on cards by the plaintiff and she copied the information obtained on cards which she filed in the office, made copies thereof and mailed one to the Bureau of Criminal Identification and Investigation at Springfield and one to the Federal Bureau of Investigation at Washington.

After entering upon her duties and on February 2, 1942, plaintiff was given a card signed by the members of the board of fire and police commissioners certifying that she had qualified and been duly appointed as stenographer of the police department of the City of Peoria. While on duty she also carried a badge bearing the inscription: "Bureau Identification—Peoria Police Department." This badge she received from her mother.

The Act under which plaintiff claims defines the word "policeman" as any member of a regularly constituted police department of a municipality, sworn and commissioned to perform police duties and includes the chief of police, assistant chief of police, chief of detectives, captains, lieutenants, sergeants, plain-clothes men and patrolmen. Section two of the same Act provides that the salary to be paid to a policeman in any municipality with 25,000 or more inhabitants but with less than 150,000 inhabitants shall be not less than $175 per month. (Ill. Rev. Stat. 1947, ch. 24, art. 11, sec. 2 [Jones Ill. Stats. Ann. 21.1359]).

In *Patteson v. City of Peoria*, 386 Ill. 460, it appeared that the board of fire and police commissioners of appellee city issued commissions to plaintiffs Elsie M. Dempsey and Irene McDonald, appointing them clerks of the Bureau of Identification and they were

each sworn to perform the duties of the offices to which they were appointed. The court said that there can be no contention that these were not police duties and the action of the city including in the appropriation ordinances of the city the salaries of such clerks in the appropriations for the police department, together with the action of the board of fire and police commissioners in appointing Elsie M. Dempsey and Irene McDonald to the positions in question and their acceptance by taking oath and giving bond, show clearly their legal employment and appointment as members of the police department of the city. The court held they were entitled to and should have received from the defendant a salary of $175 per month from the date of their commissions to the date of the termination of their services. The opinion then continued: "Plaintiffs, Elsie M. Dempsey and Irene McDonald, while not patrolmen or police matrons were appointed as clerks of the Bureau of Identification and sworn to perform the duties of such clerks of that bureau. The Bureau of Identification is clearly a part of the police department and plaintiffs Dempsey and McDonald, in performing the duties of clerks of that department, were performing police duties. They are, therefore, members of a regularly constituted police department, sworn to perform and performing police duties."

At the time of appellant's employment appellee had theretofore adopted the provisions of the law providing for the appointment of a board of fire and police commissioners and under the statute that board had the power to appoint all members and officers of the fire and police departments of the city (Ill. Rev. Stat. 1941, ch. 24, art. 14, sec. 4 [Jones Ill. Stats. Ann. 21.1370]). Section 6 of the same Act provides that all applicants for membership in the police department of a municipality shall be subject to an examination to be given by the board of commissioners which shall be

public, competitive and free to all electors of the municipality. Section 11 of article 14 of the same chapter of our statute [Jones Ill. Stats. Ann. 21.1377] provides that all officers and members of the police department of any municipality adopting the fire and police commissioners Act are city officers and sec. 87 of article 9 of the same chapter of our statute [Jones Ill. Stats. Ann. 21.1334] provides that to be eligible to any municipal office one must be a qualified elector of the municipality, except in certain specified cases. Sec. 89 of the same article and chapter [Jones Ill. Stats. Ann. 21.1336] provides that all officers of a municipality, whether elected or appointed shall take and subscribe an oath, the form of which is set forth in the statute and shall also execute a bond to be approved by the corporate authorities in whatever amount may be directed by resolution or ordinance of the municipality. By ordinance, appellee had required, at the time appellant went to work in 1942, that members of the police department should file a bond in the sum of $1,000 or more depending upon the rank held by the member of that department.

The facts in the instant case are clearly distinguishable from the facts in *Patteson v. City of Peoria,* 386 Ill. 460. Counsel for appellant argue that if appellant can be said to have been an integral part of its Peoria police department and performed police duties, then she was a member of that department within the meaning of the minimum wage law and she has established her right to the minimum wage she claims. Counsel suggests that the food, clothing and shelter requirements of appellant were just as high and just as necessary as if she had taken an oath or executed a bond and that as a member of the police department she was entitled to have her standard of living raised to the level guaranteed by the minimum wage law. This statute, however, which she invokes provides that the minimum salary of $175 per month is to be paid to a

member of a regularly constituted police department who is sworn and commissioned to perform police duties. The record here shows that appellant was given her position by the then mayor of appellee city. Upon a few occasions she went with one of the officers to the woman's detention quarters and accompanied a woman prisoner to the office where she had her desk. Her duties, however, were chiefly clerical and stenographic in character. Her position did not come to her by appointment of the board of fire and police commissioners of appellee city. She was never given any examination of any kind or character. She was not a qualified elector of the municipality and therefore was not qualified to hold a municipal office. She never executed any bond and never took or subscribed any oath as provided for municipal officers.

The allegations of her amended complaint to the effect that she was a member of the police department of the City of Peoria and that she was sworn and commissioned to perform police duties, are not sustained by the evidence found in this record. In our opinion she did not bring herself within the provisions of the Policemen's Minimum Wage Act and the judgment appealed from is the only judgment that could have been rendered under the evidence found in this record.

The judgment of the circuit court of Peoria county will therefore be affirmed.

*Judgment affirmed.*