People of the State of Illinois ex rel. Mirko Gasparas, et al., Plaintiffs-Appellees, Cross-Appellants, v. Village of Justice, a Municipal Corporation, etc., et al., Defendants-Appellants, Cross-Appellees.

Gen. No. 51,715.

First District, First Division.

October 16, 1967.

 

Schultz, Hennessy & McGrath, of Chicago (Bernard J. Hennessy, of counsel), for defendant-appellant Village of Justice, and Dean J. Sodaro, of Chicago, for defendant-appellant Board of Fire and Police Commissioners of Village of Justice.

Walter C. Wellman, of Lyons, for plaintiffs-appellees.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

In a two-count complaint, plaintiffs sought: (1) a writ of mandamus commanding the Village of Justice, its President and Board of Trustees, and the members of the Fire and Police Board of the Village of Justice, to grant civil service status to each of the plaintiffs, as members of the Village of Justice Police Department, in accordance with the terms of the Board of Fire and Police Commissioners Act, Division 2, Article 10 of the Illinois Municipal Code (Ill Rev Stats 1961, c 24, § 10–2) ; and (2) a declaratory judgment that the sole authority to appoint police officers of any kind or description in and for the Village of Justice since July 28, 1965, was the Board of Fire and Police Commissioners of the Village of Justice, and that any appointments to the Police Department made after July 28, 1965, by the Board of Trustees were void.

In two separate judgment orders, the court denied Count I and granted Count II. The Village of Justice appeals and six of the plaintiffs cross-appeal from portions of the judgment orders. The Board of Fire and Police Commissioners does not appeal from any portion of the orders.

There appears to be no serious dispute as to the facts in this case. Section 10–2–1 of the Municipal Code (1961) provided that in every municipality with at least 5,000 persons and not more than 250,000, the president of the village, with the consent of the board of trustees thereof, shall appoint a board of fire and police commissioners. As a result of a special federal census taken July 28, 1965, it was determined that the population of the Village of Justice was 5,252 persons. On August 5, 1965, and pursuant to the provisions of section 10–2–1 of the Municipal Code (1961), the Village of Justice passed and approved an ordinance establishing a board of fire and police commissioners, which specifically reserved the right of the President and Board of Trustees to make appointments to the office of Chief of Police.

On August 10, 1965, a new Board of Fire and Police Commissioners Act became effective, being sections 10–2.1–1 to 10–2.1–28 inclusive of chapter 24 of the Illinois Revised Statutes of 1965. On the same date and by the same Act, sections 10–2–1 to 10–2–25 were repealed. Section 10–2.1–28 of the new Act provided:

> "The repeal of a statute or part thereof by this Act shall not affect any action pending or rights existing at the time this Act takes effect.
>
> "The provisions of this Act insofar as they are the same or substantially the same as those of any prior statute, shall be construed as a continuation of such prior statute and not as a new enactment."

On October 7, 1965, defendants Raymond Copp, Wallace Leack and Joseph Franks were appointed members of the Board of Fire and Police Commissioners by the President and Board of Trustees of the Village. Also on October 7, 1965, without the filing of written charges or a hearing, the President and Board of Trustees of the Village discharged the plaintiffs from their respective offices in the Police Department of the Village. Thereafter, the Presi-

229

dent and Board of Trustees appointed six police officers (not the plaintiffs), five on November 4, 1965, and one on February 3, 1966.

As to Count I, at the hearing in the trial court it was stipulated that plaintiff Mirko Gasparas was entitled to be certified to civil service status with the rank of Captain of Police. After hearing the evidence and in a judgment order, the court found that the six remaining plaintiffs "were part-time members of the Police Department of the Village of Justice on July 28th, 1965 and on August 10th, 1965 and at all times between said dates, and were not full-time members of the Police Department of the Village of Justice, Illinois, and therefore do not qualify for certification as members of the Police Department of the Village of Justice under either the statute as it existed on July 28th, 1965 nor the statute as it existed on August 10th, 1965 and thereafter." As to these plaintiffs, the complaint was dismissed.

As to Count II, the court declared in a second judgment order that since the time the Village of Justice became subject to the provisions of the Fire and Police Commissioners Act on July 28, 1965, the President and Board of Trustees had "no right to appoint police officers in said Village of Justice of any kind or description, with the exception of the Office of Chief of Police, which right to make said appointment of said Chief of Police was reserved by the President and Board of Trustees in the ordinance creating the Board of Fire and Police Commissioners, passed and approved . . . on August 5, 1965."

The court further declared that the six specific police appointments (not the plaintiffs) made by the President and Board of Trustees after July 28, 1965, were void, and "that the only valid appointments of police officers of any kind or description in said Village of Justice since July 28, 1965, can only be made by the Board of Fire and

Police Commissioners of said Village of Justice in accordance with the Board of Fire and Police Commissioners Act of the State of Illinois aforesaid." It was further ordered that the President and Board of Trustees "be and they are hereby perpetually enjoined from making any appointments to the Police Department of the Village of Justice, Illinois, with the exception of the Office of Chief of Police of said Village."

Considered first is the appeal of the Village from the foregoing parts of the judgment order based on Count II. It is the theory of the Village "that the Board of Fire and Police Commissioners Act of the State of Illinois applies only to full time policemen and firemen and that the President and Board of Trustees of defendant Village of Justice have a clear right to appoint part-time police officers."

The Village contends that "the Board of Fire and Police Commissioners Act of the State of Illinois was never intended by the legislature to apply to part-time police personnel." The Village agrees that "once a municipality becomes subject to the Board of Fire and Police Commissioners Act the Board of Fire and Police Commissioners is the only legal body that can appoint and hire full-time police officers. However, there is nothing in the Act which prevents a municipality through its Board of Trustees from employing police officers on a part-time basis." The Village further asserts that neither the provisions of Chapter 24 nor any of the cases cited by plaintiff contain anything which would make part-time appointments of police officers illegal, and that "in 1965 the legislature saw fit to clearly state and we think, affirm, that the provisions of the Act apply only to full-time personnel. The legislature did not say that the only policeman who can be appointed in municipalities must be appointed on a full-time basis."

To show that the legislature intended that the Act would only apply to "full-time personnel," the Village

points to the language of various parts of the Act, such as:

(1) Section 10–2.1–4, which states in part:

"Any full time member of a regular fire or police department of any municipality which comes under the provisions of this Division or adopts this Division 2.1 or which has adopted any of the prior Acts pertaining to fire and police commissioners, is a city officer."

(2) Division 3 as it existed on July 28, 1965, in which it is said in section 10–3–1:

" '[P]oliceman' means any member of a regularly constituted police department of a municipality, sworn and commissioned to perform police duties. . . . The term 'policeman' as used in this Section 10–3–1 does not include any of the following persons: Part time policemen, special policemen, night watchmen. . . ."

(3) Also, section 10–8–2 (repealed March 18, 1963), which provided for the creation of a pension fund for policemen in villages having a population of not less than 5,000 persons, which excluded:

"(d) Part time policemen, special policemen, night watchmen, . . . ."

The Village further notes that on August 10, 1965, section 10–2.1–26 was added to the Board of Fire and Police Commissioners Act and reads as follows:

"The provisions of this Division shall apply only to full-time firemen and full-time policemen of a regularly constituted fire or police department and not to any other personnel of any kind or description."

232

From the foregoing, the Village argues that to interpret the Act "as precluding the appointment of part-time police personnel by the President and Board of Trustees would be doing violence to the plain meaning of the Statute."

The Village further argues that there is nothing in section 10–2 of chapter 24, either before or after 1965, which excludes or makes illegal the employment of part-time police officers by the President and Board of Trustees of the Village of Justice, a municipal corporation, and "that the legislature foresaw and intended that villages and cities would employ police officers in a part-time capacity who would not be subject to the Board of Fire and Police Commissioners Act and who would not be entitled to civil service status."

The Village asserts that the portion of the judgment of the trial court which declared that the President and Board of Trustees had no right to appoint police officers of any kind or description on or after July 28, 1965, and any appointments so made after July 28, 1965, are void, is erroneous and should be reversed.

On this issue, the right of the President and Board of Trustees of the Village to employ part-time police officers, the six plaintiffs who seek reinstatement as policemen contend that under the Act there can be no part-time or special officers and state, "A policeman is either a policeman, or he is not a policeman. It is respectfully submitted the Trial Court properly found that the President and Board of Trustees had no right to appoint any police officers, with the exception of the chief of police, since the Village of Justice came under the provisions of the Board of Fire and Police Commissioners Act." Plaintiffs cite portions of section 10–2.1–4 of chapter 24, effective August 10, 1965, which provides:

"The board of fire and police commissioners shall appoint all officers and members of the fire and

police departments of the municipality, including the chief of police and the chief of the fire department, unless the council or board of trustees shall by ordinance as to them otherwise provide; . . . .

"The sole authority to issue certificates of appointment shall be vested in the Board of Fire and Police Commissioners. . . .

"Any full time member of a regular fire or police department of any municipality which comes under the provisions of this Division or adopts this Division 2.1 or which has adopted any of the prior Acts pertaining to fire and police commissioners, is a city officer."

Plaintiffs assert that the above provisions are identical with the old Act, and cases construing this issue under the old Act are in point. Plaintiffs cite People ex rel. Cadell v. Board of Fire and Police Com'rs, 345 Ill App 415, 103 NE2d 666 (1952), where the mayor and city council (East St. Louis) attempted to appoint an assistant fire chief. The city was operating under the Board of Fire and Police Commissioners Act. There, it is said (p 418):

"All parties agree that the question before the court is to find the true intent of the legislature. A careful reading of the whole article 14 does not leave much doubt as to the objects and purposes sought to be obtained, viz: to provide a method by which the personnel of the fire and police departments of a city could be taken out of the realm of political patronage and given a tenure that depended upon merit in order to encourage the applications and retention of qualified persons for the said departments. Thus, the legislature has stated the public policy and the courts should be reluctant in allowing deviations therefrom."

And on page 419:

"The courts have also held that: 'It is a fundamental principle of statutory construction that the enumeration of certain things in a statute implies the exclusion of all other things' and: 'As a corollary of this rule it has been held that other exceptions than those designated by statute cannot be read into it under the rule expressio unius exclusio alterius.' In re Estate of Tilliski, 390 Ill 273, at 283. Section 4 of the article 14 above quoted is plain and unambiguous and designates only one exception, namely, 'chief' of the fire department."

Also cited is Patteson v. City of Peoria, 386 Ill 460, 54 NE2d 445 (1944), where the Board of Fire and Police Commissioners appointed police matrons. The city refused to pay them the minimum salary provided by the Policemen's Minimum Wage Act. The police matrons brought suit to recover the difference between what they were entitled to under the Minimum Wage Act and what they were being paid. There the court said (pp 466–467):

"In 1903 the legislature enacted the Fire and Police Commissioners Act. . . . The Police Matrons Act of 1897 was not repealed by the passage of the Fire and Police Commissioners Act in 1903. The effect of the later act was to remove from the operation of the earlier act all cities voting to adopt the provisions of the said act passed in 1903. In cities adopting its provisions all members of the fire and police departments are appointed exclusively by the board of fire and police commissioners. The appointments of plaintiffs Iva Hagerty and Grace Fleming to the positions of police matron can not be held void for want of power in the board of fire and police commissioners of the city of Peoria to make the same."

235

Other cases cited include Eckerman v. City of Peoria, 336 Ill App 570, 84 NE2d 559 (1949), in which a stenographer and clerk, who was appointed by the mayor of the City of Peoria without an examination by the Board of Fire and Police Commissioners, was held not a policeman "within the provisions of the Policemen's Minimum Wage Act."

Plaintiffs also note that section 10–2.1–16, headed "Temporary appointments," of chapter 24, provides:

> "In order to prevent a stoppage of public business, to meet extraordinary exigencies, or to prevent material impairment of either the police or fire department, the board may make temporary appointments, to remain in force until regular appointments may be made under the provisions of this Division 2.1, but never to exceed 60 days."

Plaintiffs assert this provision was intended to take care of emergencies which may arise, and the statute "definitely shows the intent and purport of the Legislature in outlawing part time or so-called special policemen."

On this issue the defendant Board of Fire and Police Commissioners has not taken a position, and its brief is devoted to the issue of the status of the six plaintiffs on July 28, 1965—whether they were full-time or part-time police officers.

In determining the guidelines to be applied on the issue of whether the legislature "foresaw and intended that villages and cities would employ police officers in a part-time capacity who would not be subject to the Board of Fire and Police Commissioners Act and who would not be entitled to civil service status," we note that in Patteson v. City of Peoria, 386 Ill 460, 54 NE2d 445, it is said (p 463):

> "A cardinal rule in the construction of a statute is that it should be so construed, if possible, that no

word, clause or sentence is rendered superfluous or meaningless. . . . In construing statutes, courts look at the language of the whole act, and if they find in any particular clause an expression not so large and extensive in its import as those used in other parts of the act, and, upon a review of the whole, they can collect from the more large and extensive expressions used in other parts, the real intention of the legislature, it is their duty to give effect to the larger expressions. . . . The rule of construction that the enumeration of certain things implies the exclusion of all others not mentioned is to be applied only when it appears to point to the legislative intent and never to defeat the plainly indicated purpose of the law-making body."

In applying these rules of construction, we note that section 10–2.1–4 of the Act unequivocally states that "the board of fire and police commissioners shall appoint all officers and members of the fire and police departments of the municipality, including the chief of police and the chief of the fire department, unless the council or board of trustees shall by ordinance as to them otherwise provide. . . ." Section 10–2.1–16 provides for "temporary appointments" not exceeding 60 days, "to meet extraordinary exigencies, or to prevent material impairment of either the police or fire department." After looking "at the language of the whole act" and examining "the more large and extensive expressions used" to determine "the real intention of the legislature," we believe "the plainly indicated purpose" of the legislature was to make Division 2.1 an affirmative, all-inclusive vehicle for the appointment of all members of the "fire and police departments" of the municipalities coming within its terms. When the Village of Justice established its "Board of Fire and Police Commissioners," it followed that the President and Board of Trustees had no right to appoint any police officers of any kind or description,

either "part-time or full-time," with the exception of the Chief of Police. Therefore, those parts of the judgment order included in the appeal of the Village of Justice should be affirmed.

Next considered is the cross-appeal of the six plaintiffs who, under Count I, sought to be reinstated and restored to the police department of the Village of Justice, with full civil service status. The plaintiffs assert that "the sole question involved in the Cross Appeal of plaintiffs is whether or not the six relators, who were found to be part time policemen by the Trial Court, were entitled to be blanketed in under the provisions of the Board of Fire and Police Commissioners Act."

The six plaintiffs testified that they performed the regular duties of police officers, including work on traffic details, made arrests, wore a uniform, carried guns, handcuffs and nightsticks, and had stars which were issued by the Village. They were paid for the hours they worked and were not on a salary basis. They all had other and regular employment of a substantial nature. The hours worked for the Village were irregular, and the schedule was arranged for their convenience, depending upon the hours they worked at their regular employment. Their earnings from their regular employment were in excess of the earnings received from the Village, and most of them had fringe benefits from their regular employment. Some of the plaintiffs testified that if they had a choice between their regular employment and the employment with the Village on the terms and conditions under which they had been employed, they would have continued with their regular employment.

Plaintiffs' exhibits included: a copy of the Village ordinance establishing the police department on January 2, 1953, consisting of a Chief of Police and "such other officers and policemen as from time to time shall be determined by the President and Board of Trustees" and

238

providing for the "office of policeman"; "Official Commission" cards showing the annual appointments of plaintiffs for a number of years, all prior to July 28, 1965; and a copy of an ordinance dated May 18, 1961, reestablishing the compensation for police officers on an hourly basis.

An exhibit of the Board of Fire and Police Commissioners was a copy of an ordinance passed and approved November 5, 1953, designating two members of the police department as full-time policemen and setting their daily hours of employment and monthly salary.

Exhibits of the Village included copies of the Village monthly report, showing the hours worked by the plaintiffs and amounts paid them.

The commission cards all terminated on April 30, 1965, and plaintiffs assert that since the President failed to reappoint the plaintiffs on May 1, 1965, "they continued in office until the Village came under the Board of Fire and Police Commissioners Act, and they were then entitled to tenure under the Act. They all continued to be employed by the Village during this period." Plaintiffs also assert that the official commission cards made no mention of part-time policemen or special policemen or any other designation other than "a genuine policeman."

Initially, plaintiffs contend that they were entitled to reinstatement under the provisions of the 1963 statute, in which section 10–2–7 of chapter 24 provides:

"Any member of the fire or police department of any municipality which has adopted or does adopt this Division 2 . . . shall become a member of the classified service of the fire or police department respectively, in the position held by him for one year immediately prior to the adoption of this Division 2 or said Act by such municipality, without examination."

239

Also cited is section 10–2–17, which provides:

"[N]o officer or member of the fire or police department of any municipality subject to this Division 2, who has held that position for more than one year prior to the date this Division 2 becomes effective in that municipality, . . . shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense."

Plaintiffs state these sections have been construed to require that a person holding a position as a policeman for one year prior to the time the Act becomes effective is entitled to be blanketed in under the provisions of the Act and "cannot be discharged except for cause upon written charges filed before the Board of Fire and Police Commissioners." Plaintiffs assert they "had been so employed, and no charges were filed against them before the Board of Fire and Police Commissioners."

Plaintiffs' authorities include People ex rel. Trapp v. Tanner, 10 Ill App2d 155, 133 NE2d 526 (1956), where the court said (p 162) :

"In order to avoid the confusion of a complete turn-over upon the adoption of civil service, it was provided that those who had been in office for one year prior to the time the act became effective should be protected by law in their tenure of employment."

Also, People ex rel. Siegal v. Rogers, 397 Ill 187, 73 NE2d 316 (1947), where it is said (p 194) :

"Where a policeman has regularly performed the duties of a member of the police force for a period of one year prior to the adoption of the act and has been remunerated under the authority of an ordi-

nance, a mere recital of the statute in a petition for a writ of mandamus to compel reinstatment obviates the necessity of showing that the office or position was created by ordinance, or that strict compliance was had with the statutory requirements or appointment to office. In short, the statute not only creates the office of municipal policeman, but also specifically directs that any person who has occupied the position of policeman for more than one year prior to the adoption of the act is a municipal officer and is entitled to the protection of the act."

Plaintiffs contend there is nothing in the ordinance creating the department or the commission cards which refers to part-time policemen, and that the finding of the court that they were part-time policemen is manifestly against the weight of the evidence. They state that a schedule of working hours was prepared by the Acting Chief of Police, and that they were all ready, willing and able to work at any time, and that if they had been given full-time duties they would have met their obligation.

Plaintiffs maintain that "there is nothing in the evidence to show that there is any rule against moonlighting. By necessity, a man who was only given one or two days a week employment, had to seek other employment to provide for his own needs and the needs of his family." The plaintiffs also point out the fact that "Defendants introduced no evidence to show that relators were appointed as part time policemen, and their answer, with the exception of the Board of Fire and Police Commissioners, admits they were all employed as 'policemen' as late as October 7, 1965."

The defendant Board of Fire and Police Commissioners states its theory of this case to be, "in so far as it applies to the six relators (plaintiffs), which portion of the case is all that is of interest to the Board of Fire and

241

Police Commissioners, that said persons were at the time the Board of Fire and Police Commissioners Act became effective in the Village of Justice part-time police officers and had been in that status or position for a considerable period of time and remained in that status and position until after the Act was amended on August 10, 1965. Therefore, the Board of Fire and Police Commissioners of the Village of Justice believe that said persons are not entitled to the benefits of the Board of Fire and Police Commissioners Act for the reason that such Act was not intended to cover them when it became effective in the Village of Justice on July 28, 1965, and in addition that they were specifically excluded from the coverage of the Act when the Act of August 10, 1965, became effective."

At the outset, we wish to observe that we consider the status claim of the plaintiffs to be the same whether the facts are viewed under the statute as it was on July 28, 1965, or on August 10, 1965. Although there were statutory references to "part-time policemen," the references generally were of an exclusionary nature. Nowhere is there any specific authorization or designation for the appointment of a "part-time policeman." The statutory references indicate the legislators were aware of the practices of municipalities using part-time policemen, but it is obvious that at no time was there any intention of authorizing or legalizing such a status.

██ Therefore, as plaintiffs agree that the statute does not provide for the appointment of a "part-time policeman," it follows that unless they had a full-time status they were not included in any statutory "blanketing in" provisions. This conclusion is supported by section 10–2.1–26, entitled "Application of the Act," which provides:

"The provisions of this Division shall apply only to full-time firemen and full-time policemen of a

regularly constituted fire or police department and not to any other personnel of any kind or description."

■ Plaintiffs' case authorities, previously mentioned, obviously refer to a "full-time" or "regular" status and are of value here only if plaintiffs can be termed "full-time" policemen. As to that status, plaintiffs assert the finding of the trial court that they were not "full-time" policemen is against the manifest weight of the evidence. We do not agree. The record indicates that the trial judge gave careful attention to this point, and the evidence supports his finding that plaintiffs were "part-time members of the Police Department of the Village of Justice on July 28th, 1965 and on August 10th, 1965 and at all times between said dates." Therefore, as there was no statutory authority for their employment as "part-time" policemen, it is obvious plaintiffs were not within the category intended to be protected by section 10–2–7, 10–2–17 or 10–2.1–28.

For the reasons given, the portions of both judgment orders which were appealed from are affirmed.

Affirmed.

BURMAN and ADESKO, JJ., concur.