RAYMOND WANTROBA, Plaintiff-Appellant, *v.* EDWARD C. RUSCH, Mayor of the Village of Justice, *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 77-416

Opinion filed December 7, 1977.

Michael H. Saken, of Chicago, for appellant.

Richard S. Jalovec, of Chicago, for appellees.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

■■ The question presented here is whether Raymond Wantroba, the plaintiff, was a member of the police department of the Village of Justice or an auxiliary policeman. A member of the police department is entitled to the protection afforded by the Illinois Municipal Code, section 10—2.1—17 (Ill. Rev. Stat. 1975, ch. 24, par. 10—2.1—17) which provides in part:

> "* * * [N]o officer or member of the fire or police department * * * shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense."

An auxiliary policeman has no such rights. The plaintiff's position with the Village of Justice was terminated without a hearing. Wantroba filed an action alleging that he was a member of the police department and denied a hearing in violation of the statute. He asked that a *writ of mandamus* be issued reinstating him as a patrolman in the police department in the Village of Justice. The defendants contend that he was an auxiliary policeman and not entitled to such a hearing. The trial court dismissed Wantroba's petition and this appeal follows.

Neither the Municipal Code nor the ordinances of the Village of Justice contain a definition of auxiliary policeman. Section 3—6—5 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 3—6—5) provides for the appointment and certain duties of auxiliary policemen as follows:

> "*The mayor or village president of any municipality in Illinois may, with the advice and consent of the corporate authorities, appoint auxiliary policemen* in such number as the corporate authorities shall from time to time deem necessary. Such auxiliary policemen shall not be members of the regular police department of the municipality. Such auxiliary policemen shall not supplement members of the regular police department of any municipality in the performance of their assigned and normal duties, except as otherwise provided herein. Such auxiliary police members shall only be assigned to perform the following duties in a municipality: To aid or direct traffic within the municipality, to aid in control of natural or man made disasters, to aid in case of civil disorder as directed by the Chief of Police, provided, that in cases which render it impractical for members of the regular police department to perform the normal and regular police duties, the Chief of Police of the regular police department is hereby authorized to assign auxiliary policemen to perform such normal and regular

police duties. Identification symbols worn by such auxiliary policemen shall be different and distinct from those used by members of the regular police department. Such auxiliary policemen shall at all times during the performance of their duties be subject to the direction and control of the chief of police of the municipality. Such auxiliary police officers shall not carry firearms, except with the permission of the chief of police, and while in uniform and in the performance of their duties. Such auxiliary police when on duty shall also be conservators of the peace and shall have the powers as specified in Section 3—9—4 of this Code." (Emphasis added.)

The powers specified in section 3—9—4 are to arrest all persons who violate any municipal ordinance or any criminal law of the State; to commit arrested persons to examination; to detain arrested persons; and to exercise all other powers as conservators of the peace the corporate authorities may prescribe. A similar provision is incorporated in the Justice Village Code. There is also provision of the Justice Village Code that auxiliary policemen shall be paid by the hour.

In contrast to the provision of the Municipal Code that allows the mayor or president of the village board to appoint auxiliary police officers, section 10—2.1—4 of the Municipal Code provides:

*"The board of fire and police commissioners shall appoint all officers and members of the fire and police departments of the municipality* ° * °.

° ° °

The sole authority to issue certificates of appointment shall be vested in the Board of Fire and Police Commissioners and all certificates of appointments issued to any officer or member of the fire or police department of a municipality shall be signed by the chairman and secretary respectively of the board of fire and police commissioners of such municipality ° * °.

The term 'policeman' as used in this Division does not include auxiliary policemen as provided for in this Code." (Emphasis added.) Ill. Rev. Stat. 1975, ch. 24, par. 10—2.1—4.

The complaint alleges that the plaintiff was appointed as a patrolman on September 4, 1969, and that the appointment was to last until April 30, 1970. His appointment was renewed continuously through May 18, 1976. The plaintiff performed the duties of a regular patrolman, received a regular uniform, mace, and the use of a Village of Justice police vehicle. He was also given an allowance to purchase a firearm which he was required to carry in the performance of his duties. Further, it is alleged, he received a monthly salary and received credits for time due, sick time, and furloughs.

The minutes of the village board meetings show that the plaintiff was specifically appointed as an "auxiliary policeman" on September 4, 1969. Thereafter, the minutes of the board meeting reflect that annually the plaintiff was always specifically appointed as an "auxiliary policeman." The last appointment was made for a term beginning May 15, 1975, through April 30, 1976. In addition to the complaint the plaintiff's brief in opposition to the motion to dismiss attaches as exhibits official commission cards signed by the village president and clerk which lists the plaintiff as a patrolman. A membership card received from the Illinois Police Association reflects that he is an investigator. No objection was made to the consideration of these items in the trial court and we will consider them as part of the plaintiff's contention on appeal.

The plaintiff relies principally on the case of *People ex rel. Bubash v. Board of Fire & Police Commissioners* (1973), 14 Ill. App. 3d 1042, 303 N.E.2d 776. In *Bubash* the plaintiff brought a mandamus action to compel his reinstatement as captain of police of the defendant village. In finding the plaintiff was regularly employed the court made the comment on which Wantroba relies:

> "Here plaintiff served with all the 'powers, privileges, and duties' of a regular policeman. He was a full-time employee of the Village, annually reappointed to his position. The municipal appropriations ordinances provided him with a stipulated annual salary." (*Bubash*, at 1046.)

The plaintiff comments that the duties of the plaintiff were outside of the Justice auxiliary policemen ordinance and emphasizes those allegations made in the complaint concerning annual appointments, regular police duties, use of a police vehicle, the receipt of mace, use of identical uniform and the commission cards issued to the plaintiff.

*Kagann v. Board of Fire & Police Commissioners* (1975), 28 Ill. App. 3d 209, 214, 328 N.E.2d 364, in commenting on the *Bubash* case, stated that *Bubash* and other similar cases stand for the proposition that the performance of duties, coupled with an appropriation ordinance, "were sufficient to establish the rank or office and protection in such rank." However, the court further commented, "* * * those cases do not purport to name those factors as the sole or essential requisites for the existence of the position." (*Kagann*, at 215.) The present case presents a number of factors which militate against finding the cited factors as being the sole and essential requisites for the existence of the plaintiff's status as a member of the police department. These additional factors distinguish it from *Bubash*. The performance of certain duties and the receipt of certain allowances including a monthly salary cannot avoid the specific provisions of the statute embodying a statutory scheme that require policemen to be appointed by the Board of Police and Fire

Commissioners and not the village president. The annual appointment of Wantroba specifically as an "auxiliary policeman" belies any attempt to state that he is a member of the police department as opposed to an auxiliary policeman. Municipal Code section 10—2.1—4 specifically states that certificates of appointment shall be signed by the chairman and secretary of the Board of Fire and Police Commissioners. The official commission, on which the plaintiff relies, was signed by the president of the village board and clerk. The defendant stresses in his argument that he received the trappings of his office such as a gun, mace, and use of a village police vehicle, and that he performed all police functions including making arrests and conducting investigations. Municipal Code section 3—6—5 specifically provides that the chief of police is authorized to assign an auxiliary policeman to perform normal and regular police duties where it is impractical for members of the regular police department to perform those duties. The statute also provides that auxiliary policemen when on duty shall also be conservators of the peace with the duties that were enumerated earlier in this opinion.

Even if the Village of Justice failed to completely comply with the requirements of the statute and ordinance concerning auxiliary policemen, it cannot be concluded in view of the specific statute in effect at all times that policemen are to be appointed by the Board of Fire and Police Commissioners, and also from the specific annual appointment of the plaintiff as an "auxiliary policeman" that Wantroba was a member of the police department of the Village of Justice as defined in the Municipal Code section 10—2.1—17. The order of the circuit court of Cook County dismissing the complaint is affirmed.

Affirmed.

SIMON, P. J., and McGILLICUDDY, J., concur.