JEAN YOUNG, Plaintiff-Appellee, *v.* THE BOARD OF TRUSTEES OF THE POLICE PENSION FUND OF THE VILLAGE OF WORTH *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 77-297

Opinion filed February 21, 1978.

William J. Scott, Attorney General, of Chicago (Patricia Rosen, Assistant Attorney General, of counsel), for appellant State of Illinois Department of Insurance.

Staehlin, Jantorni & Sullivan, of Chicago (John M. Sullivan and Susan L. Jantorni, of counsel), for appellant Board of Trustees of the Police Pension Fund of the Village of Worth.

Foss, Schuman & Drake, of Chicago (George C. Pontikes, Robert Drake, Sheldon Gardner, and Walter Starck, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

This is an action for administrative review of a decision of the Board of Trustees of the Police Pension Fund of the Village of Worth, Illinois (Pension Board), which declared plaintiff, Jean Young, ineligible to participate in the Worth Police Pension Fund. The decision of the Pension Board followed its hearing on an examination of the pension fund by the State of Illinois Department of Insurance (Department). After a review of the administrative record and consideration of argument, the circuit court reversed the Pension Board's decision. Defendants, the Pension Board and the Department, appeal contending that the Pension Board's decision was not against the manifest weight of the evidence.

On April 7, 1959, the village by ordinance appointed a fire and police commission with "the powers and duties as set forth in Article XIV of the Revised Cities and Villages Act." (Ill. Rev. Stat. 1959, ch. 24, par. 14—1 *et seq.*) In August of 1959 plaintiff was appointed as a radio operator or desk operator for the Worth Police Department. She was appointed by the village president and board of trustees. In May of 1963 the village president and board of trustees appointed her to the position of policewoman, at which time she received a commission card to that effect. Plaintiff, born on January 7, 1928, was 35 years of age at the time. Although she had taken no examinations prior to this time, in October of 1964 plaintiff took an examination of the village fire and police commission. She was thereafter placed on an eligibility list and was appointed as a patrolwoman by the board of fire and police commissioners. Once her appointment became effective October 5, 1964, plaintiff, for the first time, began making contributions to the Worth Police Pension Fund.

On September 4, 1974, a Department examiner declared plaintiff ineligible for participation in the Police Pension Fund because, pursuant

to the applicable statute, she was excluded. (Ill. Rev. Stat. 1963, ch. 108½, par. 3—109.) The statute specifically excluded any person whose first appointment to the police force occurred on or after July 1, 1963, if such person had then attained his 36th birthday. Plaintiff was 36 years old when she was appointed a patrolwoman by the board of fire and police commissioners. Following the receipt of the examiner's directive, the Pension Board held hearings and, thereafter, rendered a decision declaring plaintiff ineligible to participate in the Police Pension Fund because she was appointed to the police force subsequent to her 36th birthday.

Plaintiff then filed a complaint for administrative review. The circuit court reversed the Pension Board's decision, finding it against the manifest weight of the evidence. On appeal the Pension Board and the Department seek reversal of the circuit court's decision.

## I.

In ruling plaintiff ineligible to participate in the fund, the Pension Board interpreted section 3—109 of the policemen's pension fund for municipalities 500,000 and under (Pension Code). (Ill. Rev. Stat. 1973, ch. 108½, par. 3—109.) That section provided in part:

> "This Article shall not apply to the following persons: (a) Any person appointed to the police force of a police department before his 21st birthday, or any person appointed on or after July 1, 1963, if he has attained his 36th birthday, at the time of his first appointment, * * *. This paragraph shall not be construed to make ineligible a person reappointed to the police force after his 36th birthday, provided he is otherwise qualified, and at the time of his first such appointment was either a participant in, or eligible to participate in, any annuity or pension fund then provided by any existing annuity or pension statute."

As plaintiff was 35 years of age when she was appointed a policewoman by the village president and board of trustees, and 36 years of age when she was appointed a patrolwoman by the board of fire and police commissioners, the question arises as to when she was appointed or reappointed. If plaintiff was properly appointed in 1963 or properly reappointed in 1964, then she is eligible to participate in the pension fund. If, however, plaintiff was not properly appointed in 1963 or reappointed in 1964, then she is ineligible.

## A.

Pursuant to section 10—2—1 of the Illinois Municipal Code, in every municipality with a population of at least 5,000 and not more than 250,000, the village president with the consent of the village board of

trustees must appoint a board of fire and police commissioners. (Ill. Rev. Stat. 1961, ch. 24, par. 10—2—1.) This was also true in the prior version. (Ill. Rev. Stat. 1959, ch. 24, par. 14—1.) When a special census determined that the population of the village of Worth was in excess of 5,000, the village president and board of trustees passed on April 7, 1959, "AN ORDINANCE APPOINTING A FIRE AND POLICE COMMISSION." The board of fire and police commissioners was given the powers and duties enumerated by statute. The ordinance was to be in full force and effect from and after its adoption and approval.

When the village president and board of trustees appointed plaintiff a policewoman in 1963, the power to make such appointments was not in the village board, but was in the board of fire and police commissioners. Section 10—2—4 of the Illinois Municipal Code then provided:

"The board of fire and police commissioners shall appoint *all* officers and members of the fire and police departments of the municipality, including the chief of police and the chief of the fire department unless the council or board of trustees shall by ordinance as to them otherwise provide * * *." (Emphasis added.) (Ill. Rev. Stat. 1963, ch. 24, par. 10—2—4.)

Thus, the Pension Board and the Department contend that plaintiff was never properly appointed in 1963 by the village president and the board of trustees, nor was she reappointed in 1964 by the board of fire and police commissioners. Instead, they maintain that plaintiff was first appointed in 1964 when she was 36 years of age; the Pension Board and the Department, therefore, conclude that plaintiff was first appointed at an age which rendered her ineligible to participate in the pension fund. So far as we can determine from the record, plaintiff was not eligible to participate in any police pension fund, nor did she make any contribution to such a pension fund prior to October 1964.

Defendants maintain that *Eckerman v. City of Peoria* (2d Dist. 1949), 336 Ill. App. 570, 84 N.E.2d 559, is an analogous case. In *Eckerman* the court held that the stenographer/clerk in question, who had been appointed by the mayor without an examination by the board of fire and police commissioners, was not a "policeman" within the meaning of the Policeman's Minimum Wage Act. Eckerman had been hired to assume the secretarial duties previously performed by her mother; and she had never been officially appointed to the police force. In the case at bar plaintiff urges this court to consider the substance of her duties, rather than the mere form of her appointment. She points out that in 1963, when she was appointed by the village president and board of trustees, she received cards commissioning her as both a policewoman and a juvenile officer. Furthermore she worked full time on the usual and regular rotating shifts. Since she had been given commission cards and functioned as a

policewoman, plaintiff argues that she was a policewoman in 1963 when she was 35 years of age. We note, however, that a similar argument was rejected by this court in the recent case of *Wantroba v. Rusch* (1st Dist. 1977), 55 Ill. App. 3d 523, 371 N.E.2d 241.

In *Wantroba* the issue was whether the plaintiff was a member of the Justice police department or an auxiliary policeman. The plaintiff's employment had been terminated without a hearing; and his status was crucial because a member of the police department could not be so terminated without a hearing, whereas an auxiliary policeman could. Although the plaintiff in *Wantroba* had been appointed by the village president, he maintained that he was nevertheless a member of the police department in that his complaint alleged his annual appointments, regular police duties, use of a police vehicle, the receipt of mace, use of identical uniform, and certain commission cards. We rejected the plaintiff's contention, holding in part that:

> "The performance of certain duties and the receipt of certain allowances including a monthly salary cannot avoid the specific provisions of the statute embodying a statutory scheme that require policemen to be appointed by the Board of Police and Fire Commissioners and not the village president." 55 Ill. App. 3d 523, 526, 371 N.E.2d 241, 244.

■■ In *People ex rel. Gasparas v. Village of Justice* (1st Dist. 1967), 88 Ill. App. 2d 227, 231 N.E.2d 669, the court upheld a declaratory judgment which had declared the sole authority to appoint police officers was the Board of Fire and Police Commissioners of the Village of Justice, not the village president and the board of trustees. In rejecting the contention that the statute excluded the appointment of part-time police officers, the court commented:

> "When the Village of Justice established its 'Board of Fire and Police Commissioners,' it followed that the President and Board of Trustees had no right to appoint any police officers of any kind or description, either 'part-time or full-time,' with the exception of the Chief of Police." (88 Ill. App. 2d 227, 237-38.)

Likewise in the instant case, the power to appoint plaintiff a police officer was solely vested in the board of fire and police commissioners. Thus, we are bound to conclude that plaintiff was never properly appointed as a policewoman in 1963. Nothing in the case of *Patteson v. City of Peoria* (1944), 386 Ill. 460, 54 N.E.2d 445 persuades us otherwise because there the plaintiffs had been appointed by the board of fire and police commissioners.

Having determined that plaintiff was never properly appointed as a policewoman in 1963, she could not have been reappointed in 1964. We note, too, that plaintiff took her first physical examination by a Pension

Board physician in 1964. At that time section 3—106 of the Pension Code included in its definition of a "policeman," "policemen," or "member of the police force" the requirement that the person in question "is found upon examination of a duly licensed physician or physicians selected by the Board to be physically and mentally fit to perform the duties of a policeman." (Ill. Rev. Stat. 1963, ch. 108½, par. 3—106(b).) That section also included the requirement that within three months of his first appointment or three months after reappointment the person must make written application to the Board to come under the article's provisions. (Ill. Rev. Stat. 1963, ch. 108½, par. 3—106(c).) Plaintiff made no written application to the Pension Board until 1964.

### B.

Although section 3—109 of the Pension Code specifically states that nothing in the section should be construed to make a person ineligible to participate in the pension fund where certain requirements are met, those requirements are not here met. We have already determined that plaintiff could not have been reappointed because she had not been properly appointed in 1963 by the village president and board of trustees. Finally plaintiff was not a participant in "any annuity or pension fund" in 1963; she did not begin to make the contributions to the pension fund until 1964, after her 36th birthday. For all of these reasons we think that plaintiff was clearly ineligible to participate in the pension fund. Plaintiff was 36 years of age when she was first properly appointed in 1964; by the clear mandate of the statute she was ineligible to participate.

We note that in construing this statute, it is our duty to enforce the pension law as enacted, according to its plain and unmistakable provisions. (*Edwards v. Board of Trustees* (5th Dist. 1974), 22 Ill. App. 3d 260, 263, 317 N.E.2d 364, *aff'd* (1975), 61 Ill. 2d 330, 335 N.E.2d 440.) Here the legislature set forth the applicable law in the statute and we cannot depart from its clear statement therein. Where the legislative intent is plain from the language employed in a statute, we are not permitted to give the statute a meaning which is not expressed in it. *People ex rel. Campbell v. Swedeberg* (2d Dist. 1953), 351 Ill. App. 121, 125, 113 N.E.2d 849.

### II.

Plaintiff also contends that even if she was not effectively appointed until 1964, she is nevertheless eligible to participate in the pension fund by virtue of the curative and remedial provisions of the amended section 3—109 of the Illinois Pension Code. (Ill. Rev. Stat. 1975, ch. 108½, par. 3—109, as amended by Pub. Act 79—1165, effective December 18, 1975.) In part, the amended section now provides:

"Any policeman who was excluded by reason of the age restriction removed by this amendatory Act of 1975 may elect to participate by making a written application to the Board before July 1, 1976 and establishing service credit for his past service by paying into the police pension fund before July 1, 1976 the amount he would have contributed had deductions from his salary been made for such purpose at the time such service was rendered, together with interest thereon at 2% per annum from the time such service was rendered until the date the payment is made."

Plaintiff maintains that she should be allowed to participate in the pension fund retroactively. On the other hand, the Pension Board argues that the amendatory statute went into effect after the finding of plaintiff's ineligibility and that the amendatory statute cannot now serve as a curative measure to void the Pension Board's actions.

■■■ Whether a statute operates prospectively only, or also operates retroactively, is a question of legislative intent. In determining that intent there is a strict rule of construction against retroactive operation and a strong presumption that the legislature intended the statute to operate prospectively only. (*People ex rel. Manczak v. Carpentier* (1954), 3 Ill. 2d 556, 559, 121 N.E.2d 762; *Blough v. Ekstrom* (2d Dist. 1957), 14 Ill. App. 2d 153, 164, 144 N.E.2d 436.) A statute will ordinarily be construed as prospective in character and operation and not retroactive in the absence of express language declaring it to be retroactive. (*New York Life Insurance Co. v. Murphy* (1944), 388 Ill. 316, 324, 58 N.E.2d 182; *Eddy v. Morgan* (1905), 216 Ill. 437, 447, 75 N.E. 174.) We think, however, that the amendatory statute before us clearly expresses the legislative intent to make the amendment retroactive, subject to compliance with the carefully drawn requirements that excluded policemen must (1) make written application to the Board before July 1976, and must (2) pay into the pension fund the necessary contributions by the same date, plus (3) interest at two percent per annum.

■■ Plaintiff contends that she made constant application to the Pension Board prior to July 1, 1976, by virtue of her previous contributions, her numerous communications, and the present lawsuit. Yet the record is devoid of the kind of written application which the legislature obviously envisioned. Although plaintiff did make her previous contributions to the pension fund and did institute the present lawsuit, we are not convinced that these actions constitute the necessary written application. Plaintiff's brief does not spell out her "numerous communications" and her failure to demonstrate such communication in the record leads us to the conclusion that such communication was not the required written application. The hearings before the Pension Board took place on January 28 and March 4, 1975. The Board's decision was

rendered on March 14, 1975. The amendment became effective December 18, 1975. Thus, the matter was not actually ripe for consideration by the Pension Board. We note that in the record before the trial court the fact that the amendment was passed was pointed out to the trial court. Thus, there is nothing in the record before us to indicate plaintiff has complied with the key requirement necessary to give the statute retroactive application.

As the proceedings before the Pension Board concluded before the effective date of the amendment, plaintiff did not have an opportunity to present any evidence before the Pension Board as to whether she had complied with the explicit requirements of the amendment. The trial court could not consider any new evidence in the administrative proceeding. In view of the fact that we believe the amendment may be applied retroactively, it is our opinion that plaintiff should have the opportunity of demonstrating, if she can, that she made a written application to the Board before July 1976, and whether the necessary contribution together with interest at two percent per annum has been made as required in section 3—109.

Based on the record before us we think that the trial court erred in reversing the decision of the Pension Board. On administrative review, the court's function is limited to ascertaining if the findings and decision of the administrative body are against the manifest weight of the evidence. (*DeGrazio v. Civil Service Com.* (1964), 31 Ill. 2d 482, 489, 202 N.E.2d 522.) As we have explained above, based on the record before it, the Pension Board properly concluded that plaintiff was ineligible to participate in the pension fund because she had been excluded therefrom by the applicable statute. However, we are remanding the case to the circuit court so that it will remand the cause to the Pension Board with directions to reopen the record so that plaintiff may show, if she can, that she had complied with the provisions of the amendment. Accordingly, the judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded with directions.

STAMOS, P. J., and PERLIN, J., concur.