The People of the State of Illinois ex rel. Charles W. Fike, Appellee, v. Charles H. Slaughter, as Chairman, Eugene W. Mantz, Member, and John F. Chandler, as Secretary, Constituting the Members of the Board of Fire and Police Commissioners of the Village of Dolton, Appellants.

Gen. No. 48,317.

First District, Second Division.

May 23, 1961.

Arthur E. Dillner, of Dolton, and Thomas A. Matthews and Byron S. Matthews, of Chicago, for appellants.

McCarthy, Toomey and Reynolds, of Chicago (John E. Toomey and Perry G. Callas, of counsel), for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court:

Defendants appeal from a judgment order of the Circuit Court, entered solely on the pleadings and argument of counsel, directing that a writ of mandamus be issued to compel the appointment of Charles W. Fike (plaintiff) as a patrolman in the police department of the Village of Dolton, Illinois.

The complaint for mandamus alleges that in April 1951 the Village of Dolton adopted the Fire and Police Commissioners Act (Ill. Rev. Stat. 1959, ch. 24, §§ 14-1–14–17). This act provides for the appointment of a board of fire and police commissioners, of which defendants are the members. The act further provides that the board appoint all officers and members of the police and fire departments; it requires applicants to take examinations for original and promotional appointment, and also requires the board to prepare and keep a register of candidates who are eligible for appointment in the order of their relative excellence as determined by examination. It appears from the complaint that in May 1959 plaintiff filed an application with the board for a position on the police department and thereafter took the examination. On May 11, 1959 the board, by letter, advised the village president and board of trustees of the results of the examination, in which plaintiff's name appeared fifth in a six-man list. Since that date the first three candidates on the list have been appointed to the police department; the fourth candidate withdrew his name; the sixth candidate was appointed to the fire department; as of May 24, 1960 (the date the complaint was filed), plaintiff was the only candidate on the eligible list who had not been appointed to a position.

At a meeting of the village board of trustees on April 26, 1960 a resolution was unanimously carried to recommend to the board of fire and police commissioners that plaintiff be appointed as a patrolman

176

in the police department, effective May 1, 1960. On April 28, 1960 the village chief of police requested the board of fire and police commissioners to appoint a patrolman for permanent duty as soon as possible. Since plaintiff's name was the only one remaining on the eligible list, under routine circumstances he would have been appointed to the police department as of May 1, 1960. However, on May 10, 1960, he received an undated communication from the board of fire and police commissioners advising him that his name had been removed as of May 7, 1960 from the eligible list "due to circumstances evolving [sic] your application for employment . . . ." Defendants' answer avers that on May 4, 1960, at a meeting of the board at which plaintiff was present, he was presented with information disclosing that he had failed to make truthful answers to two questions on his application for certification, and further information disclosing that he had refused or neglected to pay his personal debts promptly, and that he placed bets on horse races—a practice, the board suggested to him, that was "probably . . . one reason for his inability to pay his just and true debts." The answer admitted that on May 6, 1960 the board voted to remove his name from the eligible list.

Plaintiff's reply admits that an informal conference was held with members of the board on May 4, 1960, at which time he was asked to withdraw his name from the eligible list, but that he refused. He denies that he was presented with information disclosing that he refused to pay his personal debts or that he bet on horse races. His reply further avers that written charges were not served upon him, that he was not notified of the purpose of the conference on May 4, 1960, nor was he given an opportunity to be represented by counsel or to be heard in his own defense.

177

Defendants contend that plaintiff is barred from seeking by mandamus to review a decision of the board, since the sole method provided for such review is by way of statutory administrative review action (Ill. Rev. Stat. 1959, ch. 110, §§ 264–279) which would bring the entire record before the court, and they urge that the judgment order of mandamus be reversed and the cause remanded with directions that the complaint be dismissed.

Efforts to find ways of avoiding the snare of the extraordinary remedies employed for review of administrative actions, including certiorari, mandamus, injunctive relief, and at times quo warranto, ultimately resulted, in 1945, in the adoption in Illinois of the Administrative Review Act. It was the product of two years of study and research by a legislative commission, wrote State Senator George Mills, the chairman (The Illinois Administrative Review Act, 28 Chicago Bar Record 7 (1946)), and had two principal objectives of equal stature: the first, the elimination of conflicting and inadequate common law and statutory remedies for the judicial review of decisions of administrative agencies and the substitution therefor of a single, uniform, and comprehensive remedy; the second, the making available to persons aggrieved by administrative decisions a judicial review consonant with due process standards without unduly restricting the exercise of administrative judgment and discretion essential to the effective working of the administrative process. Regarding the first objective, it is pertinent to note, continued Mills (pp 7–8) "that the remedies heretofore available to persons affected by administrative decisions were as varied in form and scope as the number of regulatory statutes themselves. . . . Mandamus and injunction, though historically and traditionally not review remedies, were perverted to such purpose largely because of the ap-

178

parent inadequacies of the other forms of review and a judicial disinclination to deprive the aggrieved complainant of his right to contest alleged abuse of administrative discretion. . . . The courts, the legal profession, the administrative agencies and the persons involved in administrative proceedings had at most a confused conception of the extent of the problem. The confusion arose partly by reason of the rapid and comparatively recent growth of administrative regulation and judicial and public reluctance to grant to the administrative branch of government a status comparable to its importance in the entire structure of government, and partly from the legislative practice of designating the review remedies ordinarily applicable to civil adversary proceedings to a hybrid type of proceeding to which they were ill suited. The Administrative Review Act, to the extent that it now embraces administrative agencies subject to its terms, deals directly and unequivocally with this problem. In Section 2 of the Act it is provided that 'any other statutory, equitable or common law mode of review of decisions of administrative agencies heretofore available shall not be employed after the effective date hereof.' "

This provision of the statute has been considered and given effect in recent decisions in this state. In People ex rel. United Motor Coach Co. v. Carpentier, 17 Ill. 2d 303, 161 N.E.2d 97 (1959), the court observed that the legislature had entrusted the secretary of state with the duty of initially determining whether an application for license should be granted or denied, and that although, in making such determination, it was necessary to pass upon questions of fact and law, under section 2-117 of the Motor Vehicle Law (Ill. Rev. Stat. 1959, ch. 95½) an applicant denied a license under section 3-801(f) thereof must obtain a hearing before the secretary of state or a hearing

179

officer designated by him, the result of which hearing is subject to review under the Administrative Review Act; and the court held that section 2 of that act prohibits relief by mandamus.

Moline Tool Co. v. Dept. of Revenue, 410 Ill. 35, 101 N.E.2d 71 (1951), involved a constitutional question brought up under the Administrative Review Act. In discussing the act, the court observed (p. 37) that before its enactment "there was diversity and uncertainty in the methods by which judicial review of the decisions of administrative agencies might be secured. (Sullivan, Judicial Review in Illinois (1949) Illinois Law Forum, 304; Davis, Review of Administrative Action, 44 Ill. Law Rev. 565 at p. 625.)," and stated (pp. 37–38): "The statute was designed to provide a single uniform method by which the decisions of most of the administrative agencies of State government could be judicially reviewed. To that end, section 2 of the act prohibits the employment of the pre-existing methods of securing judicial review." In holding for the plaintiff, the court said (p. 38): "The administrative determination of taxability made by the Department cannot be challenged in a judicial proceeding to enforce the collection of the tax. The only remedy formerly available to the taxpayer was statutory certiorari to review the administrative decision. [Citing cases.] A proceeding under the Administrative Review Act has supplanted the former statutory certiorari."

In People ex rel. Jones v. Civil Service Comm'n, 17 Ill.App. 2d 36, 149 N.E.2d 487 (1958), plaintiff sought by mandamus the restoration to a civil service eligible list as a patrolman in the police department of the City of Chicago, and certification to the position. Plaintiff's name had been stricken from the eligible list by the commission after a hearing because of his bad character and habits. The trial court, on plead-

ings and without hearing any evidence, as in the case at bar, entered a judgment order finding that the decision of the commission and the striking of plaintiff's name from the eligible register were arbitrary and invalid, and ordered the issuance of a writ of mandamus to restore his name to the eligible list for patrolman and to approve his certification to that position. On appeal this order was reversed, the court presumably adopting the commission's position that its action was not arbitrary and was in accord with the statutes of the state and the rules of the commission. The reviewing court questioned, however, whether under the circumstances mandamus was the proper procedure, discussing section 2 of the Administrative Review Act and its construction in the Moline Tool Company case and in Thompson v. Roberts, 9 Ill. App. 2d 93, 132 N.E.2d 422 (1956). In concluding its opinion, the court in the Jones case said (p. 43): "The question as to whether the Administrative Review Act has not supplanted a petition for a writ of mandamus in proceedings such as those before us was not raised in or passed on by the trial court; neither was it urged before us. Before this question is passed on by a reviewing court that court should have the benefit of briefs and argument of counsel. We make no finding on this question." In the instant proceeding, the question is squarely presented.

In the Thompson case, referred to above, plaintiff was appointed a member of the fire department of the City of Paris, Illinois in 1950. Three years later the department was reduced in size, and he was laid off and placed on the reinstatement list. He sought by mandamus to be restored as a member of the department. His petition was stricken on the motion of the defendant municipal authorities, and he then filed an amended complaint which realleged as count I the original petition for mandamus, and added count II

which prayed for judicial review of the board decision under the Administrative Review Act. The trial court denied plaintiff's amended complaint for mandamus and for review, and in a memorandum opinion found that the original petition for mandamus should be dismissed because plaintiff's remedy was under the Administrative Review Act. On appeal the court said (p. 95): "To the extent that mandamus is an available remedy, it could be described as a 'mode of review' within the terms of Section 2 of the Administrative Review Act which 'shall not be employed' in those cases coming within the terms of that Act. The Supreme Court has held that the power of the court in a proceeding under this Act is confined to affirming or reversing the decision of the administrative agency or remanding the cause for the taking of additional evidence. 'There is no provision for the joinder of a mandamus action for the restoration to the position and an action for back wages.' (Drezner v. Civil Service Commission, 398 Ill. 219 at p. 232.)"

In People ex rel. Builders Supply etc. v. Maywood, 22 Ill. App. 2d 283, 160 N.E.2d 689 (1959), plaintiff sought review by declaratory judgment of a ruling of the building commissioner of Maywood, Illinois relating to a variation from a zoning ordinance. The reviewing court followed the holding in the Moline Tool Company case that the Administrative Review Act was designed to provide a single uniform method by which the decisions of most of the administrative agencies of the state government could be judicially reviewed, to that end prohibiting the employment of the pre-existing methods of securing judicial review. In the Builders Supply case plaintiff urged that in all zoning cases two methods of court review were open, one under the procedure prescribed in the Administrative Review Act, the second an original action seeking a declaratory judgment, injunction, man-

damus, or certiorari; and contended that either method was available to the property owner after his request for a variation from the zoning board of appeals had been refused. But "if plaintiff's contention is correct," countered the court (p. 293), "then the underlying purpose of the Administrative Review Act falls, and the entire question of court review of final decisions of administrative bodies is the same as if that Act had never been passed."

In reliance on the foregoing decisions, we hold that the complaint for mandamus in the instant proceeding was not the proper remedy to review the order of the board of fire and police commissioners.

Plaintiff takes the position that review of his complaint should be under the Administrative Review Act if the board of commissioners had strictly complied with the provisions of section 264 of that statute in removing his name from the eligible list, but he argues that the commissioners did not file formal charges against him and concludes that they thereby lost jurisdiction in the matter and issued an order that was null and void. To the extent that they were constituted to pass upon the eligibility of candidates for appointment to the fire and police departments, they had jurisdiction, and if their ruling followed what plaintiff calls an informal hearing, it was nonetheless sufficient to bring the matter under the Administrative Review Act for review. In Pearce Hospital Foundation v. Illinois Public Aid Comm'n, 15 Ill. 2d 301, 154 N.E.2d 691 (1958), the Supreme Court considered a like contention. There the Public Aid Commission notified a doctor and his privately owned hospital that they would be dropped from the rolls of the medical aid program because of noncompliance with certain of its requirements. The decision of the commission was informal in nature, but the reviewing court held that it was nonetheless a final disposition of the

doctor's and the hospital's rights and privileges with respect to participation in the tax-supported medical aid program, and was sufficient to support an action for review under the Administrative Review Act.

We are impelled to hold that the issuance of the writ of mandamus was improper. The order of the Circuit Court is therefore reversed, and the cause remanded with directions to dismiss the complaint and to enter judgment against plaintiff.

Judgment order reversed, and cause remanded with directions.

BURKE, P. J. and BRYANT, J., concur.