People of the State of Illinois ex rel. Clara A. Goldfarb, Plaintiff-Appellee, v. William Sylvester White, Director Department of Registration and Education of the State of Illinois, and Charles F. Kervin, Superintendent of Registration, Department of Registration and Education of the State of Illinois, Defendants-Appellants.

Gen No. 49,608.

First District, First Division.

December 28, 1964.

William G. Clark, Attorney General, of Chicago (Raymond S. Sarnow, Richard Michael, A. Zola Groves, and Edward A. Berman, Assistant Attorneys General, of counsel), for appellants.

Ferdinand and Wenig, of Chicago (Leonard N. Wenig, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

This is an appeal from a judgment of the superior court ordering that a writ of mandamus issue directing defendants to certify plaintiff as a person authorized to practice medicine in all its branches in the State of Illinois, without examination, on the basis of the reciprocity provisions of the Medical Practice Act (Ill Rev Stats 1961, c 91).

From the uncontroverted evidence it appears that petitioner, Clara Goldfarb, on April 20, 1944, became a naturalized United States citizen. She studied medicine at Loyola University at Bologna, Italy, and graduated in 1938. After spending one year doing postgraduate work in Vienna, she came to the United States. She worked as a resident physician at the Hospital for Women and Children in New Orleans, and the Brooklyn Women's Hospital in New York, spending about a year and a half at each institution. During this period she served a one year internship at Endicott, New York.

The petitioner subsequently came to Chicago and in 1956 was a resident at Weiss Memorial Hospital. She is presently a resident physician in psychiatry at the Hines Veteran Administration Hospital, a position she has held for the last fifteen months.

Prior to 1961, and while residing in Chicago, Dr. Goldfarb attempted the Illinois examination for licensure to practice medicine in all its branches. Although she passed the clinical aspects, she failed the written examination on nine separate occasions.

In July 1961 petitioner took and passed the Ohio medical examination and in August of that year was licensed by that State. In October 1962 she applied for a medical license in Illinois without examination on the basis of reciprocity with Ohio. In August 1962 the Department noted that the Ohio requirements for license were not substantially equivalent to those in Illinois, as required by the Medical Practice Act, as one of the conditions precedent for issuing a license based on reciprocity (Ill Rev Stats 1961, c 91, § 14-3(b)).

The discrepancy in standards was caused by the fact that in Illinois, by department rule V-3, an

applicant must receive a grade of at least 60 in every subject and an overall average of 75. Ohio, while maintaining the same overall grade requirement of 75, has no minimum standard on any particular subject. In her Ohio examination petitioner received an overall average of 76.5 and received no grade lower than 60 in any one subject.

Upon discovery of the discrepancy in requirements, several applications for medical license based upon reciprocity with Ohio were turned down by the Department. Subsequently, correspondence with Ohio was initiated confirming this discovery, and reciprocity with that State was formally terminated by resolution at the November 6, 1962, meeting of the Medical Examining Committee of the Department.

Later, the action in plaintiff's case was reviewed and by letter dated July 10, 1963, she was advised that her application for a license was denied on two grounds:

(1) Reciprocity was terminated with the State of Ohio in the matter of medical registration in November 1962, for the reason that the grade requirements for licensure are not equivalent to those in Illinois; and

(2) A graduate of a foreign medical school under Rule VI, Paragraph 4 of the rules adopted for the administration of the Medical Practice Act is not eligible for reciprocity.

Plaintiff then filed her action for mandamus.

Defendants contend that plaintiff is barred from seeking to review a decision of the department by mandamus since the sole method provided for such review is by way of the Administrative Review Act (Ill Rev Stats 1961, c 110, § 264 et seq.). They urge that the judgment order of mandamus be reversed.

486

Section 2 of the Administrative Review Act (Ill Rev Stats 1961, c 110, § 265) provides:

This Act shall apply to and govern every action to review judicially a final decision of any administrative agency where the Act creating or conferring powers on such agency, by express reference, adopts the provisions of this Act. In all such cases, any other statutory, equitable or common law mode of review of decisions of administrative agencies heretofore available shall not be employed after the effective date hereof.

 As determined by the decisions of the courts of this State, Sec 2 has been construed to prohibit the use of pre-existing methods of securing judicial review, and where the Administrative Review Act embraces administrative agencies subject to its terms, it becomes the sole means of securing judicial review of decisions of administrative agencies, and eliminates the heretofore conflicting and inadequate common law and statutory remedies.

In Moline Tool Co. v. Department of Revenue, 410 Ill 35, 101 NE2d 71 (1951) the Supreme Court held that a proceeding under the Administrative Review Act, and not by the prior method of statutory certiorari, was the proper method of securing review in a taxpayer's challenge of a decision of the Department of Revenue. In discussing the Act, the court, at pages 37–38 stated:

Prior to its enactment, there was diversity and uncertainty in the methods by which judicial review of the decisions of administrative agencies might be secured. (Sullivan, Judicial Review In Illinois (1949) Illinois Law Forum, 304; Davis, Review of Administrative Action, 44 Ill Law Rev 565 at p 625.) The statute was designed to pro-

487

vide a single uniform method by which the decisions of most of the administrative agencies of the State government could be judicially reviewed. To that end, section 2 of the Act prohibits the employment of the pre-existing method of securing judicial review.

In People ex rel. United Motor Coach Co. v. Carpentier, 17 Ill2d 303, 161 NE2d 97 (1959) relief by way of mandamus, one of the "pre-existing" methods was held to be prohibited by Section 2 of the Act in an action brought to compel the office of Secretary of State to issue motor vehicle licenses to plaintiff. Therefore, mandamus was not available. See also People ex rel. Fike v. Slaughter, 31 Ill App2d 175, 175 NE2d 585 (1961), where the court exhaustively reviewed the authorities on the subject and concluded that mandamus was no longer an appropriate method, but that administrative review was now available to review the ruling of a village board of fire and police commissioners removing plaintiff's name from list of persons eligible for appointment as patrolman in the police department of the village.

And, in People ex rel. Chicago & N. W. Ry. Co. v. Hulman, 31 Ill2d 166, 201 NE2d 103 (1964) in holding that administrative review is the sole means to review the assessment of the petitioner's property and that the mandamus action brought for that purpose would not lie, the Supreme Court stated, at page 169:

Stated differently, it is the holding of Moline Tool and the decisions adhering to it that the Administrative Review Act exclusively applies to and governs every action to review judicially a final decision of an administrative agency where the act creating or conferring power on the agen-

cy provides such manner of review by express reference. Going straight to the situation of this case, we held in People ex rel. United Motor Coach Co. v. Carpentier, 17 Ill2d 303, 306, and Pre-Fab Transit Co. v. Carpentier, 17 Ill2d 515, 517, that judicial review by a *mandamus* proceeding cannot be resorted to where the administrative decision is expressly subjected to review under the provisions of the Administrative Review Act.

Section 16b–2 of the Medical Practice Act provides that "All final administrative decisions of the Department hereunder shall be subject to the provisions of the 'Administrative Review Act'. . . ." Plaintiff contends that the term "hereunder" has application only to section 16b of Chapter 91, dealing with revocation and suspension, and not the entire Act.

Section 16b–1, which immediately precedes section 16b–2, is as follows:

16b–1. Action or report of examining committee— Re-examination or rehearing]. None of the functions, powers and duties enumerated in this Act shall be exercised by the Department of Education and Registration except upon the action and report in writing of the examining committee. . . .

The action or report in writing of a majority of the committee designated shall be sufficient authority upon which the Director . . . may act.

Whenever the Director is satisfied that substantial justice has not been done either in an examination, or in the suspension or revocation of or refusal to restore a license or certificate of authority, he may order a re-examination or rehearing by the same or other examiners.

As created by the section, the medical examining committee exercises no final decision-making powers. It is merely a fact finding body that makes recommendations in a written report to the Director. The Director, though not possessing power to act without the committee's recommendations, in his sole discretion decides whether the committee's findings and recommendations shall be adopted by him and become final or the matter returned to the same committee or another for rehearing. Chicago College of Osteopathy v. Puffer, 3 Ill App2d 69, 74, 120 NE2d 672 (1954). In the Chicago College case the court held that an appeal may be had to the circuit court only if the Director adopts the findings and recommendations of the committee. Here, therefore, the action of the Director constituted a final administrative decision subject to review.

This view is further supported by section 264 of the Administrative Review Act (Ill Rev Stats 1963, c 110, § 264), which defines an administrative decision as: "[A]ny decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency."

■ By requiring that the functions, powers and duties enumerated by the Medical Act be exercised only upon the action and written report of the committee, it would be entirely inconsistent to hold that administrative review under section 16b–2 was intended only where revocation and suspension of licenses are involved, and that all other departmental decisions based upon committee actions be excluded from administrative review. For purposes of uniform and consistent administrative review under the said section, "hereunder" when applied conformably with the other provisions of the statute, must be read as

490

meaning under the "Act." This view has, at least sub silencio, been adopted in Messina v. Department of Registration and Education, 37 Ill App2d 250, 185 NE2d 389 (1962) where the court in an Administrative Review Action, reviewed the decision of the Director denying the individual a license to practice medicine on the basis of reciprocity.

■ We believe that the Administrative Review Act is applicable by express reference and therefore governs every action to review judicially a final decision of the Director of the Department of Registration and Education. Administrative review here serves the purpose for which it was enacted in that it (1) eliminates conflicting and inadequate common law and statutory remedies for the judicial review of decisions of administrative agencies and the substitution therefor of a single uniform and comprehensive remedy; and (2) makes available to persons aggrieved by administrative decisions a judicial review consonant with due process standards without unduly restricting the exercise of administrative judgment and discretion essential to the effective working of the administrative process. People ex rel. Fike v. Slaughter, 31 Ill App2d 175, 175 NE2d 585.

■ We hold, therefore, that administrative review was the only method by which the action of the department could here be judicially reviewed, and the trial court erred in denying defendants' motion to dismiss the mandamus action.

Were we to hold that mandamus might lie as a method of reviewing the Director's action in the instant cause, we would, nevertheless, conclude that the writ was improperly issued. The reciprocity section of the Medical Practice Act (Ill Rev Stats 1963, c 91, § 14) provides that "(T)he department *may in its discretion* issue a license *without examination to* any person who has been licensed to practice medicine

491·

... in any other state . . . upon the following conditions." Among the conditions enumerated in the Act, it is provided that the requirement for a license to practice medicine in the particular state in which the applicant obtained his license be *"deemed by the department to have been substantially equivalent* to the requirements for a license to practice medicine in all its branches in force in this State *at the date* of his license." (Emphasis ours.)

█ Section 14(7) of the Medical Practice Act was amended in 1963 to read as follows:

> *"In the exercise of its discretion* under this Section, the Department is empowered to consider and evaluate each applicant on an individual basis. It *may take into account, among other things,* the extent to which there is or is not available to the Department, authentic and definitive information concerning the quality of medical education and clinical training which the applicant has had. Under no circumstances shall a license be issued under the provisions of this Section to any person who has previously taken and failed the written examination conducted by the department for such license". (As amended and approved August 15, 1963.) (Emphasis ours.)

From the above provisions it is quite evident that the legislature intended and did provide that whether or not a medical license would be granted on the basis of reciprocity was a matter within the sound discretion of the department.

█ In People ex rel. Atchinson, T. & S. F. Ry. Co. v. Clark, 12 Ill2d 515, 147 NE2d 89 (1957), on pages 519 and 520, the court said:

> The traditional use of the writ of mandamus at common law and in the Illinois courts, has been

492

to compel the performance of a purely ministerial duty which the relator is entitled of right to have performed and which the party owing the duty has failed to perform. . . . Where the performance of an official duty or act involves the exercise of judgment or discretion, the officer's action is not subject to review or control by mandamus.

Earlier Illinois cases did indicate that mandamus might issue where there was a clear abuse of discretion. People ex rel. Elmore v. Allman, 382 Ill 156, 46 NE2d 974 (1943), the court examined the nature and scope of mandamus and on page 164 concluded:

Admittedly, mandamus does not lie to control or review the discretion of an inferior tribunal . . . and in mandamus actions against administrative officers . . . the courts will not inquire into the merits of the matter that it may substitute its own judgment or discretion for that of the administrative body. (People ex rel. Miller v. City of Chicago, 234 Ill 416.) In this latter case it was said: "Where acts and duties necessarily call for the exercise of judgment and discretion on the part of an officer, body or person at whose hands performance is required, mandamus will not lie to direct how discretion shall be exercised."

It is true that an action in mandamus may, under certain circumstances, provide a remedy against a clear abuse of discretion. However, its application is restricted to directing that action be taken and it is never available to direct what action shall be taken.

Again, in People ex rel. Ballinger v. O'Connor, 13 Ill App2d 317, 142 NE2d 144 (1957) the court held,

it well established, mandamus will not lie to review a discretionary act of an administrative agency, a department head, or a civil service commission, and stated at page 325: "The only question presented to the courts is to determine whether or not the administrative body has acted within its defined powers, and if the court has determined that the action is outside of its powers, its resulting void order may be ordered expunged from its records." The trial court here not only ruled, in effect, that the Director had abused his discretion, but ordered him to issue the license, thereby compelling the performance of a discretionary act. The court, therefore, erred in issuing the writ.

For the foregoing reasons the decree issuing the writ of mandamus is reversed and judgment entered here dismissing plaintiff's action for mandamus.

Reversed and judgment here.

MURPHY, P. J. and BURMAN, J., concur.