ROOSEVELT-WABASH CURRENCY EXCHANGE, INC., Plaintiff-Appellant, *v.* ANTHONY J. FORNELLI, Director of the Illinois Department of Financial Institutions, *et al.*, Defendants-Appellees.

First District (5th Division)   No. 62865

Opinion filed May 27, 1977.

Rosenthal & Carnow, of Chicago (Donald S. Carnow and Joseph D. Palmisano, of counsel), for appellant.

William J. Scott, Attorney General, of Chicago (John D. Whitenack, Assistant Attorney General, of counsel), for appellee Illinois Department of Financial Institutions.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Defendant, Anthony J. Fornelli, Director of the Illinois Department of Financial Institutions (Director), approved the application of defendant, 1015 South State Currency Exchange, for a community currency exchange license pursuant to the Currency Exchange Act. (Ill. Rev. Stat. 1973, ch. 16½, pars. 30 through 56.3.) Plaintiff, Roosevelt-Wabash Currency Exchange, Inc., filed an amended complaint to review the Director's action pursuant to the Administrative Review Act. (Ill. Rev. Stat. 1973, ch. 110, par. 264 *et seq.*) Plaintiff appeals from the order granting the Director's motion to dismiss the amended complaint.

Plaintiff contends that it was entitled to a hearing before the Director, that it has standing to seek administrative review under the Administrative Review Act, and that it has a right to judicial review. We affirm.

Plaintiff in the amended complaint alleged that it received a letter from the Illinois Department of Financial Institutions "requesting its observation and remarks with respect to the introduction of a currency exchange at * * * 1015 South State Street, Chicago, Illinois"; that in response it submitted lengthy objections attached to the complaint, which stated that the proposed location was previously occupied by another currency exchange which ceased operating about mid-1973, that the issuance of a currency exchange license to the applicant at the location would adversely affect the financial stability of plaintiff's currency exchange, and urged the Director's serious consideration. The amended complaint further alleged that notwithstanding numerous requests the Director advised that plaintiff was not entitled to any form of hearing before the Department; that plaintiff was advised on March 7, 1975, that the Director had approved the application; that the decision is arbitrary, capricious and a denial of due process of law, equal protection and right of confrontation and cross-examination; that plaintiff will on information and belief lose approximately 25 percent of its business and become financially impaired. The amended complaint prayed that the decision "denying plaintiff its statutory entitlements to continued stability, be reversed." The Director's motion to dismiss the amended complaint alleged that plaintiff lacked standing, the absence of jurisdiction under the Administrative Review Act, and the failure of the amended complaint to state a cause of action.

OPINION

Plaintiff initially contends that as an existing licensee it was entitled to a hearing before the Director on the application for a license by a potential competitor. We disagree.

■■ As to matters purely statutory in origin, whatever rights the

parties may have to a hearing emanates from the statute. (*Asche v. Rosenfield* (1950), 405 Ill. 108, 89 N.E.2d 885.) Due process does not necessitate a hearing in every case of government impairment of a private interest. (*Stanley v. Illinois* (1972), 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208.) As a competitor, plaintiff has no direct interest in the matter which would give rise to a specific right to be heard. *American Surety Co. v. Jones* (1943), 384 Ill. 222, 51 N.E.2d 122.

■■ The Currency Exchange Act in section 4.1 (par. 34.1) in pertinent part provides:

> "Upon receipt of an application for a license * * *, the Director shall investigate the need of the community for the establishment of a community currency exchange at the location specified in the application.
>
> * * * If the issuance of a license * * * will not promote the convenience and advantage of the community in which the business of the applicant is proposed to be conducted, then the application shall be denied."

Section 4 (par. 34) specifies the necessary information to be provided in the application, and section 10 (par. 40) specifies the requisite qualifications of an applicant, and of its officers and directors if a corporation, to be vouched for by two reputable citizens.

■■ The above section 4.1 (par. 34.1) clearly imposes no duty on the Director to hold hearings, make findings or to prepare or file a written order or decision in initially passing on the application. It is significant that the Currency Exchange Act expressly provides for hearings before the Director in only two instances relative to licensing: (1) upon written request of an applicant whose application has been denied (par. 40), and (2) where the Director proposes to revoke a license previously issued (par. 45). The requirement of section 4.1 (par. 34.1) to investigate does not mandate a quasijudicial hearing. Instead, the term "investigate" is approriate as to a nonjudicial function of an administrative agency for a general one-sided presentation of issues without issues drawn, and "hearing" is appropriate to quasijudicial proceedings which include parties, issues of law and fact, and at which parties are entitled to be present, participate, and obtain records of the proceedings. (See *Bowles v. Baer* (7th Cir. 1944), 142 F.2d 787, and generally, 2 Am. Jur. 2d *Administrative Law* §§257 and 414 (1962); 73 C.J.S. *Public Administrative Bodies and Procedure* §87 (1951).) Section 4.1 (par. 34.1) in no respect allows anyone or any interested person to intervene or object in the Director's initial investigation and processing of the application. Specifically, nowhere in the Currency Exchange Act is an existing currency exchange operator given the right to object or to demand a hearing thereon.

The Director's solicitation in the instant case of plaintiff's "observations and remarks with respect to the introduction of a currency exchange at the [proposed] address" was incident to the information-gathering process under the Director's duty to investigate. Neither the characterization by plaintiff of its response as objections nor the one-sided investigation in which the views were presented elevate the investigation process to a hearing in which plaintiff did or could participate as a party. There was no duty to hold a hearing in initially acting upon the application.

Plaintiff contends that the approval of the Director in the instant case was a final decision reviewable under section 2 of the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, par. 265) and, being an objector to the approval, it had standing to file an action for administrative review. Plaintiff is mistaken. Section 22.01 (par. 52.1) of the Currency Exchange Act states:

> "All final administrative decisions of the Director hereunder shall be subject to judicial review pursuant to the provisions of the 'Administrative Review Act' * * *. The term 'administrative decision' is defined as in section 1 of the 'Administrative Review Act'. The person seeking judicial review shall pay to the Director the cost of preparing and certifying the record of proceedings before the Director."

Section 1 of the Administrative Review Act in part by definition states:

> " 'Administrative decision' or 'decision' means any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency."

The Administrative Review Act governs judicial review of a final decision of an administrative agency where the act created or conferring powers on the agency provides such manner of review by express reference. (*Wilkins v. Department of Public Aid* (1972), 51 Ill. 2d 88, 280 N.E.2d 706.) The Administrative Review Act does not purport to give an independent remedy or create a new cause of action, but when adopted merely provides a method of review. (*Chicago Transit Authority v. Fair Employment Practices Com.* (1968), 103 Ill. App. 2d 329, 243 N.E.2d 638.) The words in Administrative Review Act "for review of decisions which terminate proceedings" contemplate an administrative process which presents an issue for hearing and disposition by an impartial trial agency. *People ex rel. Vestuto v. O'Connor* (1953), 351 Ill. App. 539, 115 N.E.2d 810.

■■■ The above section 22.01 (par. 52.1) adopted the Administrative Review Act as to administrative decisions of the Director but expressly

limited the scope of "administrative decisions" to the definition set forth in section 1 of the Administrative Review Act. Relative thereto, it also expressly contemplates a "record of proceedings" for the purposes of such review. The term "proceeding" utilized in section 1 of the Administrative Review Act consistently contemplates an administrative process which presents an issue for hearing and disposition by the Director acting as an impartial agency. In the initial action upon an application, section 4.1 (par. 34.1) of the Currency Exchange Act does not require the Director to prepare and keep on file a written order or decision which contains findings and reasons supporting his action. This is in direct contrast to such requirements imposed by section 10 (par. 40) of the Currency Exchange Act where the Director has denied an application both initially and then following a requested statutory hearing, and by section 15 (par. 45) when the Director is acting to revoke a license. The expression in the latter two sections and the omission to so require under section 4.1 (par. 34.1) indicates a legislative intent not to impose such requirements in the Director's original execution of an application for license. We conclude that the Director's approval of the instant application is not a decision, order or determination within the scope of section 22.01 (par. 52.1) of the Currency Exchange Act. Furthermore, under the Administrative Review Act the right to review a final administrative decision is limited to the parties of record to the original proceeding before the agency. (*Lake County Contractors Association v. Pollution Control Board* (1973), 54 Ill. 2d 16, 294 N.E.2d 259.) It clearly appears that the initial processing of the instant application by the Director was not a "proceeding" nor was plaintiff a party thereto within the provisions of the Administrative Review Act. Neither has the Administrative Review Act been adopted relative to the initial execution of the Director in passing upon applications for license. Where approval is granted and no denial had previously been made by the Director, there is no hearing or proceedings from which administrative review will lie under the Administrative Review Act. Plaintiff has no standing to maintain an action for administrative review.

Plaintiff further contends that it has a right to *judicial* review because it is an existing licensee with a statutorily vested competitive interest which is protected from arbitrary interference. It is to be noted that plaintiff in the prior contention claimed a right to *administrative* review under the Administrative Review Act. To support its right to bring this action, plaintiff cites *Association of Data Processing Service Organizations, Inc. v. Camp* (1970), 397 U.S. 150, 25 L. Ed. 2d 184, 90 S. Ct. 827, to establish that the tests for standing are (1) whether the challenged action has caused a party injury in fact, economic or otherwise, and (2) whether the interests sought to be protected by a party are arguably within the zone

of interests to be protected or regulated by the statute or constitutional guaranty in question. Plaintiff argues that one of the objectives of the Currency Exchange Act is to assure the financial stability of existing currency exchanges by legislating against the very competition adverse to a licensee's financial stability which plaintiff here seeks to protect, citing *Gadlin v. Auditor of Public Accounts* (1953), 414 Ill. 89, 110 N.E.2d 234, and *Durchslag v. Smith* (1958), 14 Ill. 2d 549, 152 N.E.2d 828. However, plaintiff's reliance on these two cases is misplaced.

While the Director in his investigation may properly consider the potential effect upon existing facilities *(Durchslag v. Smith)*, the test established under section 4.1 (par. 34.1) of the Currency Exchange Act for the grant or denial of a license to engage in the currency exchange business is the convenience and advantage of the cummunity to be serviced by the proposed exchange; the test is not whether the financial stability of existing exchanges in the area will be impaired. *(Thillens, Inc. v. Department of Financial Institutions* (1962), 24 Ill. 2d 110, 180 N.E.2d 494.) Section 4.1 (par. 34.1) does not prohibit individuals from establishing and operating currency exchange businesses not detrimental to the public but does provide a means to insure safe financial practices, the limitation of licenses being merely incidental to the regulation of such business; the prime test is the "convenience and advantage of the community." *(Gadlin v. Auditor of Public Accounts.)* The financial impairment or lack of impairment of plaintiff's existing currency exchange business has not been accepted as a criteria. (See *Forty-Seventh & Cicero Currency Exchange, Inc. v. Montgomery* (1974), 18 Ill. App. 3d 811, 310 N.E.2d 741 (abstract).) It is well established that freedom from lawful competition is not constitutionally protected. *Tennessee Electric Power Co. v. Tennessee Valley Authority* (1939), 306 U.S. 118, 83 L. Ed. 543, 59 S. Ct. 366.

■■ The Illinois Supreme Court in *Thillens* has construed the Currency Exchange Act as having the interests of the public within the purposes or objects which are to be protected and regulated by the statute rather than the rights of any existing licensees. Section 29 (par. 56.2) does declare the operation of an unlicensed exchange, and the unlawful conduct or operation of a licensed exchange, to constitute unfair competition with licensed and legally operated exchanges doing business in the same community for which any licensee legally operating in the same community may obtain an injunction against such unfair competition. (Ill. Rev. Stat. 1973, ch. 16½, par. 56.2.) However, plaintiff as an exchange licensee under the Currency Exchange Act does not otherwise have any exclusive franchise, territorial nor other rights, as to any other lawfully operating licensed competitor. In view of the prior determination by the Illinois Supreme Court we reject plaintiff's

contention that its interests are arguably within the zone of interest to be protected or regulated by CCEA. Freedom from lawful competition is not a vested right entitling plaintiff to judicial review. (*American Surety Co. v. Jones.*) We need not consider the other test set forth in *Data Processing*. Plaintiff has not stated a proper cause of action to invoke judicial review of the Director's approval of the instant application for license.

For the above reasons the order of dismissal entered by the circuit court of Cook County is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.