SAHARA COAL COMPANY, INC., Plaintiff-Appellee, *v.* THE DEPARTMENT OF MINES AND MINERALS, Defendant-Appellant.

Fifth District   No. 80-532

Opinion filed December 30, 1981.—Rehearing allowed and supplemental opinion filed January 27, 1982.

Tyrone C. Fahner, Attorney General, of Springfield (Jon E. Tweedt, Assistant Attorney General, of counsel), for appellant.

Charles R. Jelliffe, of Harrisburg, and Michael Schneiderman and Michael M. Conway, both of Chicago, for appellee.

JUSTICE WELCH delivered the opinion of the court:

This case presents several fundamental issues in the law of administrative review in Illinois. It arises in the context of the denial of an application for a strip-mining permit under the Surface-Mined Land Conservation and Reclamation Act (Ill. Rev. Stat. 1979, ch. 96½, par. 4501 *et seq.*) (the Act).

Sahara Coal Company operates several coal mines in Southern Illinois, including its 500-acre No. 6 mine in Saline County. Aware that the supply of coal in the existing mined area was running out, Sahara contemplated expanding its operations to a neighboring 189-acre tract, most of which is owned outright by Sahara. As required by the Act (Ill. Rev. Stat. 1979, ch. 96½, pars. 4504, 4506), Sahara applied to the Illinois Department of Mines and Minerals on March 8, 1979, for a surface-mining permit. Additional information requested by the Department was supplied by Sahara.

The County Board of Saline County did not ask that a public hearing be held on Sahara's application. As the Act does not contemplate a hearing in the absence of the county board's request, none was held in this case. (Ill. Rev. Stat. 1979, ch. 96½, par. 4506(f).) The Department did, however, solicit and accept expert opinions from its staff, from people associated with the Sahara proposal, and from independent sources. (Ill. Rev. Stat. 1979, ch. 96½, par. 4506(g).) A thick volume of scientific data was amassed, and, acting upon this information, the Department denied Sahara's application in a letter of October 31, 1979, giving reasons for the decision. Ill. Rev. Stat. 1979, ch. 96½, par. 4506(g).

Sahara brought suit for administrative review in the Circuit Court of Saline County. There, it was held that the Department's denial of the application was against the manifest weight of the evidence in the administrative record compiled by the Department. The court directed the immediate issuance of a strip-mining permit. An appeal has been taken to this court by the Department, which argues that: (1) the circuit court had no jurisdiction to review the denial of Sahara's application, (2) the court improperly limited the administrative record which was submitted to it by the Department, (3) the court should not have reversed the decision of the Department, and (4) the court should not have acted to grant the permit. As the arguments presented in the Department's brief proceed in a logical sequence, we will deal with them in that order.

Section 13a of the Act (Ill. Rev. Stat. 1979, ch. 96½, par. 4516) proclaims that "[a]ll final administrative decisions of the Department hereunder shall be subject to judicial review pursuant to [the Administrative Review Act, Ill. Rev. Stat. 1979, ch. 110, par. 264 *et seq.*]" An administrative decision is defined in the Administrative Review Act as "any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties

and which terminates the proceedings before the administrative agency."
Ill. Rev. Stat. 1979, ch. 110, par. 264.

The Department argues that "[a]t first blush, it would appear under
these statutory provisions that [Sahara] has properly proceeded under the
Administrative Review Act. However, an examination of the statutory
language and the case law interpreting the statutory language reveals that
the Administrative Review Act is not the appropriate remedy in this case.
The reason for this is clear, the words in Section 1 of the Administrative
Review Act, [Ill. Rev. Stat. 1979, ch. 110, par. 264] 'which terminates the
proceedings before the administrative agency,' contemplate an adminis-
trative process which presents an issue for hearing and disposition by an
impartial trial agency."

Sahara responds by noting that if the General Assembly intended to
preclude judicial review in cases such as this, "such intent must be made
specifically manifest, and persuasive reason must exist to believe such was
the legislative purpose. * * * Only upon a showing of clear and con-
vincing evidence of contrary legislative intent should the courts restrict
access to judicial review." (*Klein v. Fair Employment Practices Com.*
(1975), 31 Ill. App. 3d 473, 478, 334 N.E.2d 370, 374.) Sahara suggests that
the provisions of the Administrative Review Act show that a full hearing is
not necessary for judicial review.

For example, according to Sahara, section 9(a) of the Administrative
Review Act (Ill. Rev. Stat. 1979, ch. 110, par. 272(a)), requires the com-
plaint in administrative review to "specify whether the transcript of evi-
dence, if any, or what portion thereof, shall be filed by the agency as part
of the record." Under section 9(b) (Ill. Rev. Stat. 1979, ch. 110, par.
272(b)), the agency must file an original or copy of "the entire record of
proceedings under review, including such evidence as may have been
heard by it * * *." And, sections 12(f) and 12(g) (Ill. Rev. Stat. 1979, ch.
110, pars. 275(1)(f), 275(1)(g)) confer certain powers on the circuit court
"where a hearing has been held by the agency."

The language of the Surface-Mined Land Conservation and Recla-
mation Act and the Administrative Review Act do not support the Depart-
ment's claim that a hearing is a prerequisite to judicial review of its
decisions on strip-mining applications. Nor do the cases cited by the
Department as authority for that proposition provide such support.

In both *People ex rel. Vestuto v. O'Connor* (1953), 351 Ill. App. 539,
115 N.E.2d 810, and *Roosevelt-Wabash Currency Exchange, Inc. v.
Fornelli* (1977), 49 Ill. App. 3d 896, 364 N.E.2d 449, a "proceeding" which
may be the subject of judicial review was described as "an administrative
process which presents an issue for hearing and disposition by an
impartial third agency." In *Vestuto*, a discharged police officer brought a
*mandamus* action to compel his reinstatement. The court held that the suit
was not barred by the officer's failure to proceed under the Administra-

tive Review Act because the police commissioner's peremptory order of dismissal was not a "proceeding" which could be reviewed under that act.

In *Roosevelt-Wabash*, it was held that a neighboring business did not have standing to challenge the issuance of a community currency exchange license to a competitor. The court stated in *dicta* that even if the neighboring currency exchange had that standing, the act of granting a currency exchange license was not a "proceeding" which could be the subject of judicial review. Under the Community Currency Exchange Act (Ill. Rev. Stat. 1979, ch. 16½, par. 30 *et seq.*), the Director of the Illinois Department of Financial Institutions is not required to prepare and keep on file a written order pertaining to his initial action on an application for a license. (Ill. Rev. Stat. 1979, ch. 16½, par. 34.1.) If an applicant objects to the denial of his application, or if a license is revoked, then a hearing must be held and findings must be made. (Ill. Rev. Stat. 1979, ch. 16½, pars. 40, 45.) These latter "proceedings" may then be scrutinized under the Administrative Review Act. Ill. Rev. Stat. 1979, ch. 16½, par. 52.1.

In contrast, the Surface-Mined Land Conservation and Reclamation Act requires that the Department's approval of an application "be based upon the advice of technically trained foresters, agronomists, economists, engineers, planners and other relevant experts having experience in reclaiming surface-mined lands * * *." When no hearing is requested, the Department "shall consider written testimony from county boards" and "shall immediately serve copies of such written testimony on the applicant and give the applicant a reasonable opportunity to respond by written testimony." If the applicant's proposals are rejected, the Department "shall issue a statement of its reasons for its determination and shall make such statement public." Ill. Rev. Stat. 1979, ch. 96½, par. 4506(g).

■■ It is readily seen that, while the Community Currency Exchange Act permits an applicant to act as an advocate only after his initial application is denied, or if his license is revoked, the Surface-Mined Land Conservation and Reclamation Act allows the applicant to assume that role from the beginning. Moreover, the Director of the Department of Mines and Minerals must compile a record to support his decision on the application. No such record need be maintained by the Department of Financial Institutions, and no order to confirm its decision need be made, until the initial application is denied or a license is revoked. The presence of the adversary process and an administrative record at all stages of the strip-mining permit application convinces us that this is an administrative process which "presents an issue for hearing," even though neither the applicant nor witnesses may appear before the Department. We hold that the decision of the Department of Mines and Minerals to grant or deny a strip-mining permit under the Surface-Mined Land Conservation and Reclamation Act is reviewable under the Administrative Review Act whether or not any type of "hearing" is ever held.

As its second assignment of error, the Department asserts that the circuit court improperly limited the record before it. More than six months after the suit was brought in the Circuit Court of Saline County and approximately six months after it had filed an "Administrative Record," the Department moved to supplement that record. Some of the material sought to be inserted consisted of memoranda made by Department personnel during the pendency of Sahara's application. Sahara agreed that this material should be included, and it was.

The Department also wanted to expand the administrative record to include testimony presented at a hearing which resulted in the adoption of the Department's "Rule 1104," which establishes standards for the reclamation of certain farmland. It is the application of this rule to Sahara's proposal which is contested in this case, and the Department alleges that it relied upon this testimony in denying Sahara's application. The hearing at which this testimony was taken was held on January 8, 1976, more than three years before Sahara applied for the permit in question. The trial court denied the Department's request to amend the record to include this evidence.

The Department now argues that the trial court should have allowed the amendment of the record, because, in his letter denying Sahara's application, the Director asserted that he relied upon the 1976 hearing testimony to support his decision. Sahara replies that section 12(1)(b) of the Administrative Review Act (Ill. Rev. Stat. 1979, ch. 110, par. 275(1)(a)), by allowing the circuit court "to make any order that it deems proper for the amendment, completion or filing of the record of proceedings of the Administrative Agency," vests it with broad discretion in this type of order.

As noted above, section 5(g) of the Surface-Mined Land Conservation and Reclamation Act (Ill. Rev. Stat. 1979, ch. 96½, par. 4506(g)) provides that if no hearing is held on an application, the Department will make its decision based upon written testimony, a copy of which must be served upon the applicant to allow him to respond. In this case, the circuit court found that "the Department's failure to indicate in writing the portion of the transcript, if any, relied upon by it and to provide such portion to Sahara for comment evidences that the Department did not, in fact, rely on this data in ruling on Sahara's application."

■■ The record in this case supports the trial court's order, which was not an abuse of discretion. Against the Director's claim that he relied upon the 1976 testimony must be placed several factors. The hearing occurred three years before Sahara's application. The Department did not incorporate the testimony into any of the memoranda made during the pendency of that application, and referred to the testimony only briefly, primarily in the Director's letter of denial. Sahara was never given a copy of the testimony as part of the administrative record on this permit, and was thus

not allowed to respond to it. Moreover, even when Sahara brought suit, the Department submitted an administrative record without any of the hearing testimony. It was not until six months after the suit that the Department sought to amend the record. This evidence suggests that the 1976 testimony was not of great importance to the Department in its decision, and the belated offer of amendment was only a retrospective effort to strengthen the record in its favor. The trial court refused to expand the overly lengthy record in this case by including material of slight significance to the decision making process. We cannot condemn its order as an abuse of discretion.

Next, the Department contests the trial court's ruling on the merits of this controversy. In particular, this case concerns the requirements established by the Department's Rule 1104 for reclaiming certain strip-mined land. That Rule sets out standards for reclamation when the Director determines that the land to be affected is:

"(1) capable of being reclaimed for row-crop agricultural purposes based on United States Soil Conservation Service soil survey classifications of the affected land prior to mining, and

(2) * * * that the optimum future use of the land affected is for row-crop agricultural purposes." (Ill. Rev. Stat. 1979, ch. 96½, par. 4507(j).)

Rule 1104 allows the Director to "alter the slope and texture requirements under this Rule only upon a clear and convincing showing that to vary such requirements would better effectuate the purposes of this Act than would enforcing the standards herein."

In a letter of October 31, 1979, denying Sahara's application, the Director stated that

"I have decided that the following soils, located within the proposed permit areas, are suitable for row crop agricultural purposes based on the United States Department of Agriculture's Soil Conservation Service soil survey classifications, are capable of being reclaimed for such purposes, that the optimum future use of these soils is for row crop agricultural purposes, and should be reclaimed to Rule 1104 standards:

| | |
|---|---|
| Belknap (382) | Hosmer (214C2) |
| Stoy (164B) | Baulic (787) |
| Hosmer (214B) | |

In making the above determination, the Department has relied upon the record in this matter, which record includes the testimony and information properly presented at the public hearing held on January 8, 1976, in Room C-1, State Office Building in Springfield, Illinois."

The Director further determined that Sahara's reclamation proposal was not "clearly and convincingly" superior to one which would conform to

Rule 1104. The variance from Rule 1104 sought by Sahara, and therefore its application, were denied.

The Department urges this court to reinstate its decision on the merits. It is alleged that the evidence in the record proves that Rule 1104 applies to Sahara's land, and that Sahara's proposal is not better than reclamation under Rule 1104. Sahara agrees with the trial court's ruling that the Department's application of the rule to Sahara's land was contrary to the evidence in the administrative record. Even if this holding is not accepted Sahara argues that its proposal is superior to Rule 1104's requirements, and that, even if it is not, the Department may not force it to "create a soil condition better than that which existed prior to surface mining." (Ill. Rev. Stat. 1979, ch. 96½, par. 4507(j).) We do not need to compare Sahara's proposal with Rule 1104, or with the land sought to be mined, for the Director's application of Rule 1104 to that land was against the manifest weight of the evidence in the administrative record.

In searching the record for evidence to support the Director's decision, we have found much testimony which urges that Rule 1104 apply to the land, and that Sahara's variance from the rule be rejected. However, no authority states that the optimum future use of the land is for row-crop agriculture. What evidence addresses the optimum use of the land generally proclaims that use as pastureland.

The executive director of the Saline County Office of the United States Department of Agriculture's Agricultural Stabilization and Conservation Service studied the land in question. He wrote that it "is best suited for pasture as most of this land is on C and D slopes and has been severely eroded due to poor land management by past owners. As a result, the topsoil is now very shallow and even non-existent on some areas. For future use, this area of land should be established in permanent vegetative cover of some nature and if pastured should be done so under a high level of pasture management."

Sahara notes that much of the soil in the area sought to be reclaimed is categorized as "Hosmer silt loam." In a map prepared by the United States Department of Agriculture's Soil Conservation Service for the use of the Saline County Board, the Hosmer Soils in Saline County were described as follows:

> "Gently sloping to moderately steep, moderately well-drained silty soils with fragipans; on uplands. Best suited for pasture and hayland in a livestock enterprise. Intensive conservation treatment needed for grain production. This association [of soil types] includes the best soils for residential and urban uses in the county."

To clarify this description, it should be said that a "fragipan" surface under the topsoil is a hard, relatively dense material which is somewhat difficult for roots and water to pass through. Much of the land which Sahara seeks to mine has a fragipan subsurface, and, according to the

map, those Saline County lands with that type of subsurface are best suited for pasture and hayland or for woodland, wildlife and recreational uses.

To counter this evidence, the Department points to the opinions of several experts who urge that the land be reclaimed according to the standards of Rule 1104. However, those experts merely compared the benefits of Rule 1104 with those of Sahara's proposed reclamation plan. They did not directly address the question of the optimum future use of the land, and therefore provide no evidence to support the Director's determination that Rule 1104 applies to the land in question.

■■ The only statement which proclaims the optimum future use of the land as row-crop agriculture is that of the Director. His statement is conclusory and uncorroborated by any testimony in the administrative record. Moreover, his evaluation of the future uses of the land seems to be based solely on the types of soils which comprise the land, rather than an assessment of the capability of the specific land in question. In addition to being unsupported by authority, the Director's conclusions are far outweighed by those of experts who reach the opposite results, as the latter experts have considered such factors as the land's drainage, slope, past use, subsoil structure, erosion and topsoil depth, which were not weighed by the Director. The Department's application of Rule 1104 to this land was contrary to the evidence in the administrative record, as the circuit court held.

Finally, the Department takes issue with the trial court's order that a permit issue immediately. Section 12(1)(e) of the Administrative Review Act (Ill. Rev. Stat. 1979, ch. 110, par. 275(1)(e)) empowers the trial court "to affirm or reverse the [administrative] decision in whole or in part." Sahara claims that this provision is broad enough to allow the trial court to order the issuance of a mining permit. Although not mentioned by Sahara, it could also be argued that because the Administrative Review Act authorizes the trial court to remand the case to the agency when a hearing has been held (Ill. Rev. Stat. 1979, ch. 110, pars. 275(1), (f)(g)), then a case may not be remanded to the agency if no hearing has been held. According to this argument, the only alternatives available to the trial court were to affirm the Department or to grant the permit.

■■ ■ The Administrative Review Act was enacted to provide persons aggrieved by administrative decisions judicial review consonant with due process standards without unduly restricting the exercise of administrative judgment and discretion essential to the effective working of the administrative process. (*People ex rel. Goldfarb v. White* (1964), 54 Ill. App. 2d 483, 491, 203 N.E.2d 599, 603.) To maintain a proper distribution of power between courts and agencies, administrative review has been limited to consideration of the record to determine whether the action of the agency is supported by the evidence in that record. *Young v. Board of*

*Trustees* (1978), 57 Ill. App. 3d 689, 373 N.E.2d 708; *Taylor v. Civil Service Com.* (1961), 33 Ill. App. 2d 48, 178 N.E.2d 200.

■■ This carefully developed system of limited review would be shattered if we would read the Administrative Review Act to prohibit, by implication, the circuit court from remanding a case to an administrative agency when that agency did not hold a formal hearing. The circuit court is not to interfere with the discretion of an administrative agency unless it is abused. (*People ex rel. Stephens v. Collins* (1966), 35 Ill. 2d 499, 221 N.E.2d 254.) Even then, the function of the court is to review the exercise of discretion, not to exercise that discretion itself. If a trial court were not empowered to remand a case in which an agency issued an invalid order, it would have no choice but to issue a valid order. This would entail the usurpation of the agency's powers and would destroy the concept of limited judicial review in those cases.

■■ In order to rectify this omission in the Administrative Review Act, we hold that the powers of remandment granted to the circuit court by sections 12(1)(f) and (g) of that Act (Ill. Rev. Stat. 1979, ch. 110, pars. 275(1)(f), (g)), may be exercised even if no hearing has been held by the agency involved in the proceedings. We note that reviewing courts are empowered to grant remandment "[i]n all appeals." Ill. Rev. Stat. 1979, ch. 110A, par. 366(a)(5).

Deciding that remandment was available to the trial court does not, of course, decide whether the issuance of the mining permit was beyond the authority of the trial court in this case. Here, we must examine the relevant case law, for nothing in the Administrative Review Act expressly authorizes or prohibits a circuit court from issuing a permit of any sort.

In *Sanderson v. De Kalb County Zoning Board of Appeals* (1974), 24 Ill. App. 3d 107, 320 N.E.2d 54, a landowner requested a zoning variance which would allow light manufacturing in an agricultural area. The zoning board of appeals granted the variance, and a neighboring landowner brought an action in administrative review. The circuit court reversed the decision of the zoning board, but instead of remanding the case to the board, it ordered that the property in question be used for agricultural purposes. The appellate court stated:

"The circuit court, in rendering its decision, apparently gave no thought to the possibility of a nonconforming use existing upon appellant's property. And while the circuit court had the power to reverse the Board for not making findings of fact under the Administrative Review Act, the Act does not confer authority upon the court to eliminate an existing nonconforming use simply because a zoning board of appeals fails to grant a variance upon proper findings of fact." (24 Ill. App. 3d 107, 111, 329 N.E.2d 54, 57.)

The case was remanded by the appellate court to the zoning board of appeals for further findings of fact.

■■ The similarities between this case and *Sanderson* are compelling. In this case, the trial court determined simply that the reclamation requirements of Rule 1104 do not apply to Sahara's land. This determination is correct. But, from this finding, it does not automatically follow that Sahara is entitled to a mining permit. In denying Sahara's application, the Department concluded only that Sahara's proposal did not comply with Rule 1104. It did not need to decide whether the reclamation plan complied with the rules and laws governing land other than row-crop land (Ill. Rev. Stat. 1979, ch. 96½, par. 4507), and thus the circuit court had no power to determine whether the plan met those requirements.

It should be observed that the defect below was that the trial court's order exceeded the scope of its review. We do not say that a permit of this nature may never be granted under the Administrative Review Act. In fact, in *Celotex Corp. v. Pollution Control Board* (1977), 53 Ill. App. 3d 662, 368 N.E.2d 1134, the appellate court ordered the Board to issue a permit on remand from direct administrative review to the court. In *Celotex*, the owner of a dry roofing felt plant applied to renew his permit to operate that plant. The application was denied on the basis of a sulfur dioxide emission standard which had been invalidated in another case decided before the application was submitted. In the administrative review, the agencies admitted error in applying that standard. The only question before the court in *Celotex* concerned the proper disposition on remandment to the agencies.

Recognizing that the plant owner could be penalized for his operation without a permit, the court directed the issuance of a permit from the date of expiration until 120 days after the issuance of the appellate court's mandate, so that the owner could refile an application for renewal. The court noted that its order was a "minimal invasion" of agency discretion and duties.

The *Celotex* case is distinguishable from the facts presented here. The permit issued in this case was not an extension of an existing permit, it was not intended to be temporary, and it was not based on stipulated error. It was thus more than a "minimal invasion" of the duties and discretion of the Department of Mines and Minerals and may not be upheld under the principles of *Celotex*.

In conclusion, the circuit court had the authority to review the denial of the application, and did not abuse its discretion in limiting the record on review. It also correctly held that Rule 1104 does not apply to Sahara's land. However, its issuance of a mining permit exceeded the scope of its administrative review, and must be reversed. This cause is remanded to the Department of Mines and Minerals which is ordered (1) to find that

Rule 1104 does not apply to the land sought to be mined, and (2) to render a decision on Sahara's application, based on the existing record, within 14 days of the issuance of this court's mandate. The existing permit will, of course, remain in effect until the issuance of our mandate.

Affirmed in part, reversed in part, and remanded.

KASSERMAN and HARRISON, JJ., concur.

## SUPPLEMENTAL OPINION ON REHEARING

JUSTICE WELCH delivered the opinion of the court:

In its petition for rehearing, Sahara requests only that we allow the permit originally granted by the trial court to remain in effect for 60 days after the issuance of our mandate. We have considered Sahara's petition, and, finding no need for oral argument on it, we hereby grant the request to extend the validity of the permit for 60 days after the issuance of this court's mandate.

KASSERMAN and HARRISON, JJ., concur.